UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUNCIE DOOKERAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>v.<br><br>XUNLEI LIMITED, LEI CHEN, ERIC ZHOU and TAO THOMAS WU.<br><br>                              Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Runcie Dookeran ("Plaintiff"), by his attorneys, except for his own acts, which are based on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Xunlei Limited ("Xunlei" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.      This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Xunlei American Depositary Shares ("ADS") between October 10, 2017, and January 11, 2018, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in this District.

## PARTIES

5.      Plaintiff purchased Xunlei ADS within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

6.      Defendant Xunlei is incorporated in the Cayman Islands with its principal offices located at 7/F Block 11, Shenzhen Software Park, Ke Ji Zhong 2nd Road, Nanshan District Shenzhen, 518057, The People's Republic of China. Xunlei's depositary of its ADS program, The Bank of New York Mellon maintains a corporate trust office at which the ADSs are administered located at 101 Barclay Street, New York, New York 10286 and principal executive office located at One Wall Street, New York, New York 10286. Xunlei's ADS trades on the NASDAQ under the ticker symbol "XNET."

7.     Defendant Lei Chen ("Chen") was the Company's Chief Executive Officer ("CEO") and Director of the Company at all relevant times.

8.     Defendant Tao Thomas Wu ("Wu") was the Company's Chief Financial Officer ("CFO") from the beginning of the Class Period until September 18, 2017.

9.     Defendant Eric Zhou ("Zhou") has been the Company's CFO from September 18, 2017, to date.

10.     Defendants in paragraphs 7-9 are collectively referred to herein as the "Individual Defendants."

11.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)     approved or ratified these statements in violation of the federal securities laws.

12.     Because of the Individual Defendants' positions within the Company, they had access

to undisclosed information about Xunlei's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

13.     As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Xunlei's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public,

and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

15.     Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Xunlei ADS by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Xunlei's business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Xunlei securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A.     Company Background

16.     Xunlei is a cloud-based acceleration technology company operating an internet platform in China based on cloud technology to enable users to access, manage, and consume digital media content.

17.     The Company's main product is OneCloud, a network linked storage device allowing multiple users to share online storage remotely and a "mining machine" for users to share their idle bandwidth with Xunlei's content delivery networks.

### B.     Material Misstatements and Omissions during the Class Period

18.     The Class Period begins on October 10, 2017, when Xunlei issued a press release announcing the introduction of "OneCoin" to the market on October 12, 2017, a blockchain-based product with no central bank endorsed value. The product also called "Wanke coin" or "Wankebi" allowed OneCloud users to receive OneCoin for contributing their OneCloud bandwidth. Users

could then purchase Xunlei's products, goods and services using OneCoin – for example, extra storage on its cloud service, or faster download speeds for its torrent downloader software. Upon information and belief, Xunlei issued over 1.6 million OneCoin every 24 hours for a maximum total number of OneCoin to be issued of 1.5 billion.

19.     On November 16, 2017, Xunlei issued a press release, also attached as exhibit 99.1 to the Form 6-K filed with the SEC on November 20, 2017, announcing the Company's financial and operating results for the third fiscal quarter and nine month ended September 30, 2017 ("Q3 2017 Press Release"). The press release stated in relevant part:

**XUNLEI ANNOUNCES UNAUDITED FINANCIAL RESULTS FOR THE THIRD QUARTER ENDED SEPTEMBER 30, 2017**

Shenzhen, China, November 16, 2017 (GLOBE NEWSWIRE) – Xunlei Limited ("Xunlei" or the "Company") (Nasdaq: XNET), a leading cloud-based acceleration technology company in China, today announced its unaudited financial results for the third quarter ended September 30, 2017.

**Third Quarter 2017 Financial Highlights:**

•     **Total revenues** were US$47.3 million, an 15.6% increase from the corresponding period of last year and up 14.0% from the previous quarter.

•     **Online advertising revenues (revenues primarily from mobile advertising)** were US$5.7 million, a 22.9% increase from the corresponding period of last year and a 9.7% increase from the previous quarter.

•     **Other internet value-added services ("IVAS")** revenues were US$20.8 million, a 64.9% increase from the corresponding period of last year and a 32.4% increase from the previous quarter. IVAS consists of cloud computing and services other than subscription and advertising.

**Recent Developments:**

•     Received value-added telecommunication services license, which covered the provision of CDN services, from the Ministry of Industry and Information Technology of P.R.C. (MIIT).

6

- Successfully launched OneThing Cloud, an intelligent private cloud hardware, on JD.com and other e-commerce platforms in September. It received nearly 100% positive reviews and the accumulated reservations have lately exceeded 8 million units.

- Awarded information security certification issued by Shenzhen municipal government for OneThing CDN systems.

- Started to expand the applications of crowd-sourced computing beyond the CDN market.

Mr. Lei Chen, Chief Executive Officer of Xunlei, commented: "We are pleased that our cloud computing business continued to expand at a fast pace and gain market recognition during the third quarter of 2017. Our total revenues for the past quarter exceeded the high end of our guidance range. We expect the growth momentum to continue into the fourth quarter of 2017 with improvement in both the top and the bottom lines."

"*Xunlei is transforming itself from a traditional internet service provider of membership subscription to a growth-oriented company developing innovative cloud computing products and exploring emerging blockchain technology. Our crowd-sourced computing technology utilizes idle computing power including bandwidth, storage and CPU from individual bandwidth contributors to make internet more affordable to everyone. Our clients and strategic partners include some of the household names in China. We believe this is a testimony of the power of shared economy." continued Mr. Lei Chen.*

"We believe blockchain technology today is reminiscent of the internet technology in the 80's when the users of the internet were primarily enterprises. With millions of DAUs of Xunlei APPs and subscription members, we have the natural advantage of developing blockchain technology and exploring its applications to the mass markets. Although it is of great challenge, we are hopeful and excited about our potential contribution to the internet industry." concluded Mr. Lei Chen.

Emphasis added.

20.     On November 16, 2017, during a conference call to discuss the Company's

financial and operating results for the third fiscal quarter and nine months ended September 30,

2017("Q3 2017 Conf. Call"), Xunlei's CEO, Defendant Chen stated in relevant part:

We also introduced a voluntary OneThing incentive program based on OneThing Cloud. By enrolling into this program, users give permissions to us to use their idle bandwidth storage and CPU through OneThing Cloud and receive a blockchain

based crypto token as reward. This program is also fairly popular among OneThing Cloud users.

The introduction of the new device and blockchain improves our crowd-sourced computing business. The device offers better hardware configuration, which allows us to go beyond CDN domain, and offer new types of services to our customers. We already started testing with one of our top customers. Blockchain technology allows us to construct an automated, efficient and trustworthy reward mechanism. It is a crucial building block to the crowd-sourced computing ecosystem.

21.    When asked about what Xunlei would do with OneCoin, Defendant Chen answered:

Okay, I see. The company has no plan to monetize over the coin at all. And as I said before, the crypto token is rewarded to users who volunteer in the OneThing reward program to encourage users to share idle bandwidth storage and the CPU computing for its leverage. That is volunteer program and is set up separate from the sales of the OneThing Cloud product itself.

So, I'd like to just explain a little bit about the – about it. So, OneThing Cloud as a product is priced at a slightly lower the market, the competitive market for equivalent products that are offered by other companies. And so, after purchasing OneThing Cloud, the user has a option to enroll into a voluntary program and to share their computing power and we rewarded it by this crypto token. From the beginning we as company has no plan at all to monetize on this coin, and we certainly do not in the future.

22.    When asked about the difference between the Company's reward system using OneCoin and an Initial Coin Offering ("ICO"), Defendant Chen answered:

Well, the explanation – the definition of ICO I think we're as a private company we're not in the position to comment what is the very definition of ICO. But what I can tell our investors is that, we work closely with the regulatory authorities in China and we follow all the local regulations and laws. And we conduct business, we have been conducting business and we will conduct business in a manner that is honest and responsible, and meet all the regulations as law requirements.

23.    The statements in paragraphs ¶18-¶22 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose that: (1) Xunlei had

engaged into an unlawful financial activity; (2) OneCoin was a form of disguised ICO; (3) Xunlei was engaged into the promotion of an Initial Miner Offering ("IMO"); and (4) as a result of the foregoing, Defendants' statements about Xunlei's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

C.   **The Truth Begins to Emerge**

24.     On or about November 24, 2017, various news outlets in China reported that Xunlei's business partner Shenzhen Xunlei Big Data Information Services Company Ltd. ("Big Data") was accusing Xunlei of conducting an unlawful ICO through the OneCoin project.

25.     On this news and over the course of two trading days, the Company's ADS price declined $6.33 from a close on November 24, 2017, at $24.91 per ADS, to a close at $18.58 per ADS on November 28, 2017, *a drop of approximately 25.41%.*

26.     On November 28, 2017, Xunlei issued a press release, announcing an update on its business relationship with Big Data ("Nov 2017 Press Release"). Therein, Company stated in relevant part:

> Xunlei Provides Clarification on Recent Market Development
> SHENZHEN, China, Nov. 29, 2017 (GLOBE NEWSWIRE) -- Xunlei Limited ("Xunlei" or the "Company") (Nasdaq:XNET), a leading cloud-based acceleration technology company in China, provided the following clarification on the recent market development.
>
> Currently, Xunlei has 28.77% equity interest in Shenzhen Xunlei Big Data Information Services Company Ltd. ("Big Data") and has no management control over Big Data. In response to certain public statements made by Big Data recently, the board of directors of the Company ("Board") issued an open letter and firmly supported the Company's endeavor to utilize its many years of technical know-how in the field of distributed computing to explore commercial applications with the help of blockchain technology.
>
> To protect the interests of the Company, with the approval of the Board, the Company has requested Big Data to stop using the "Xunlei" brand name immediately and also terminated its right to use the "Xunlei" brand.

For the past five consecutive years, Xunlei has been selected as one of the Top 100 Internet Companies In China jointly by Internet Society of China and MIIT.  As a listed company, Xunlei's policy is to abide by applicable laws and government regulations, implement corporate governance and operate strictly under the guidance of the Board.

27.     On this news, the Company's ADS price declined $5.78 from a close on November 28, 2017 at $18.58 per ADS, to a close at $12.80 per ADS on November 29, 2017, *a drop of approximately 31.1%.*

D.     **Additional Material Misstatements and Omissions**

28.     Throughout the Nov 2017 Press Release the Company made material misrepresentations, in relevant part:

> To ensure sustainable operations and to protect all stake holders, the Company will maintain and engage in proactive communications with authorities and implement an ID registration system in mid-December for the operation of Wankebi and other preventive measures to ensure that the operation of Wankebi and other business activities are in compliance with relevant laws and government regulations.
>
> The Company believes that Wankebi is a kind of digital asset and can be used on the Company's internet properties and should not be traded on other transaction platforms. When developing blockchain technology, the Company utilizes such features as openness, transparence and security for their applications.  Wankebi is only a symbol of proof for these applications, rather than a subject of speculation.

29.     On December 9, 2017, Xunlei issued a press release written in Mandarin Chinese ("Dec 2017 Press Release") announcing that it had renamed OneCoin to Lianke and that the company would work with the authorities to help launch a "crackdown" on illegal trading platforms.

30.     The statements in paragraphs ¶28-¶29 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose that: (1) Xunlei had

10

engaged into an unlawful financial activity; (2) OneCoin was a form of disguised ICO; (3) Xunlei was engaged into the promotion of an Initial Miner Offering ("IMO"); and (4) as a result of the foregoing, Defendants' statements about Xunlei's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

E.   **The Truth Emerges**

31.    On January 12, 2018, the National Internet Finance Association of China, a national organization initiated by multiple ministries, commissions and the People's Bank of China, issued a "Risk Alert" notice on "Disguised ICO Activities" (""Jan 2018 Notice") stating in relevant part:

> The *Announcement on Guarding against ICO Risks*, jointly issued by 7 ministries including the People's Bank of China in September 2017, clearly pointed out that ICO activities are suspected of involving illegal criminal activities including illegal fund-raising, illegal issuance of securities, and illegal sale of notes and bonds and that all institutions and individuals should immediately stop engaging in ICO activities. With the gradual phasing out of ICO projects nationwide, Initial Miner Offerings (IMO), represented by the token Lianke (formerly known as Wankebi) issued by Xunlei, has emerged as a potentially risky model that warrants vigilance.
>
> Since last October, a series of "virtual digital assets" have been issued, including Lianke, LLT, and BFC Points. ***In the case of Lianke issued by Xunlei, for example, the issuing company in effect substitutes Lianke for the duty to pay back project contributors with legal tender, making it essentially a financing activity and a form of disguised ICO. In addition, with frequent promotional activities and publishing of trading tutorials, Xunlei has lured many citizens without sound discernment into IMO activities.***
>
> NIFA hereby calls on consumers and investors to gain a clear understanding of the nature of relevant models, strengthen awareness of risk prevention, make investments rationally, and refrain from blindly following speculation and hype. Any illegal financial activities in the form of IMO, ICO activities targeting domestic residents through deployment of foreign servers, and exchange services for "virtual currencies", once found, can be reported to relevant regulatory agencies or NIFA. Any such activities suspected of violating criminal laws can be reported to the police. NIFA members should enhance self-regulation, resist illegal financial activities, and refrain from participating in any activities involving ICO or speculation in "virtual currencies".

Emphasis added.

32.     On this news, the Company's ADS price declined $6.27 from a close on January 11, 2018 at $22.90 per ADS, to a close at $16.63 per ADS on January 12, 2018, *a drop of approximately 27.38%.*

## ADDITIONAL SCIENTER ALLEGATIONS

33.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Xunlei, their control over, and/or receipt and/or modification of Xunlei's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Xunlei, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

34.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's ADS. As detailed above, when the truth about Xunlei's misconduct and its lack of operational and financial controls was revealed, the value of the Company's ADS declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Xunlei's ADS price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the ADS price decline negates any inference that the loss suffered by Plaintiff and

other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

35.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Xunlei's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Xunlei's ADS to be artificially inflated. Plaintiff and other Class members purchased Xunlei's ADS at those artificially inflated prices, causing them to suffer the damages complained of herein.

**PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET**

36.     At all relevant times, the market for Xunlei ADS was an efficient market for the following reasons, among others:

(a) Xunlei ADS met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

(b) During the Class Period, Xunlei ADS were actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, Xunlei filed with the SEC periodic public reports during the

Class Period;

(d) Xunlei regularly communicated with public investors via established market communication mechanisms;

(e) Xunlei was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about Xunlei was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

37.     As a result of the foregoing, the market for Xunlei ADS promptly digested current information regarding Xunlei from all publicly available sources and reflected such information in Xunlei's stock price. Under these circumstances, all purchasers of Xunlei ADS during the Class Period suffered similar injury through their purchase of Xunlei's ADS at artificially inflated prices, and a presumption of reliance applies.

38.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's financials and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Xunlei.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

39. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

40. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

41. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Xunlei who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Xunlei ADS on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants

have or had a controlling interest (the "Class").

43.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Xunlei securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Xunlei or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Upon information and belief, as of March 31, 2017, Xunlei had more than 138 million shares held by The Bank of New York Mellon, the depositary of Xunlei's ADS program; with each ADS representing five shares of ADS. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

44.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

45.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)      whether the federal securities laws were violated by the defendants'

respective acts as alleged herein;

(b)     whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c)     whether the price of Xunlei securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I
### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Xunlei ADS at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

50.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's ADS in an effort to maintain artificially high market prices for Xunlei securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Xunlei as specified herein.

52.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Xunlei's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Xunlei and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Xunlei ADS during the Class Period.

53.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation,

development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

54.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Xunlei's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Xunlei's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Xunlei's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the

ADS trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Xunlei's ADS during the Class Period at artificially high prices and were or will be damaged thereby.

56.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Xunlei's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Xunlei securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

57.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's ADS during the Class Period.

59.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of ADS giving rise to the cause of action.

<u>**COUNT II**</u>
<u>*The Individual Defendants Violated Section 20(a) of the Exchange Act*</u>

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of Xunlei within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level

positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

62.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Xunlei, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

64.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's ADS during the Class Period.

65.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of ADS giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a) Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d) Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: January 18, 2018     /s/ Eduard Korsinsky
           **LEVI & KORSINSKY, LLP**
           Eduard Korsinsky
           30 Broad Street, 24th Floor
           New York, NY 10004
           Tel: (212) 363-7500
           Fax: (212) 363-7171
           Email:ek@zlk.com