UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUNCIE DOOKERAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>XUNLEI LIMITED, LEI CHEN, ERIC ZHOU and TAO THOMAS WU,<br><br>Defendants. | Case No. 1:18-cv-00467-RJS |
| PENG LI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>XUNLEI LIMITED, LEI CHEN, ERIC ZHOU and TAO THOMAS WU,<br><br>Defendants. | Case No. 1:18-cv-00646-RJS |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF HESONG SUN FOR CONSOLIDATION OF THE ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF
<u>COUNSEL</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

I.      THE ACTIONS SHOULD BE CONSOLIDATED……………………………….4

II.     THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF .............. 5

      A.     The Procedure Required by the PSLRA ............................................................. 5

           1.  Movant is Willing to Serve as Class Representative .................................. 6

           2.  Movant has the Requisite Financial Interest in the Relief Sought by the Class ................................................................................................................. 7

      B.     Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure ........................................................................................................ 8

           1.  Movant's Claims are Typical of the Claims of all the Class Members ...... 9

           2.  Movant Will Adequately Represent the Class .......................................... 10

III.    MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED................... 10

CONCLUSION............................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**

*In re Drexel Burnham Lambert Grp.*,
   960 F.2d 285 (2d Cir. 1992) .................................................................................. 9, 10

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982) .................................................................................................... 9

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) .................................................................................. 4, 5

*In re Milestone Sci. Sec. Litig.*,
   183 F.R.D. 404 (D.N.J. 1998) .................................................................................. 8, 9

*Mitchell v. Complete Mgmt., Inc.*,
   Case No. 99-CV-1454 (DAB), 1999 WL 728678 (S.D.N.Y. Sept. 17, 1999) ................ 4

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ..................................................................................... 9

*In re Party City Secs. Litig*,
   189 F.R.D. 91 (D.N.J. 1999) ......................................................................................... 8

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997). .................................................................................. 5

*In re Razorfish, Inc. Secs. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001) ........................................................................... 2

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ......................................................................................... 9

*Schulman v. Lumenis, Ltd.*,

   2003 WL 21415287 (S.D.N.Y June 18, 2003) ............................................................... 8

*Smith v. Suprema Specialties, Inc.*,

   206 F. Supp. 2d 627 (D.N.J. 2002) ............................................................................... 2

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,

   216 F.R.D. 248 (S.D.N.Y. 2003) .................................................................................. 8

*Weiss v. York Hosp.*,

   745 F.2d 786 (3d Cir. 1984) .......................................................................................... 9

*Weltz v. Lee*,

   199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................. 4, 7

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................................ 5

15 U.S.C. § 78u-4(a)(3)(A) .................................................................................................. 6

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................... passim

15 U.S.C. § 78u-4(e) ............................................................................................................ 7

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................................... passim

Fed. R. Civ. P. 42(a) ......................................................................................................... 4, 5

**PRELIMINARY STATEMENT**

Presently pending before the Court are two securities class action lawsuits (the "Actions") brought on behalf of all persons who purchased American Depositary Shares ("ADSs") of Xunlei Limited ("Xunlei" or the "Company"), between October 10, 2017, and January 11, 2018, inclusive ("Class Period")[1]. Plaintiffs in the Actions allege violations of the Securities and Exchange Act of 1934 (the "Exchange Act") against the Company, Lei Chen ("Chen"), Eric Zhou ("Zhou"), and Tao Thomas Wu ("Wu") (all defendants other than the Company, collectively, the "Individual Defendants").[2]

Movant Hesong Sun ("Movant") lost approximately $216,469.26 as a result of the alleged fraud during the Class Period. Movant respectfully submits his memorandum of law in support of his motion for (a) consolidation of the actions (b) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and (c) for approval of his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel.

Movant believes that he has the largest financial interest in the outcome of the case.[3] As such, Movant meets the requirements of the PSLRA for appointment as Lead Plaintiff. Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his

---

[1]  The Actions are entitled *Dookeran v. Xunlei Limited et al.,* No. 1:18-cv-00467-RJS (the "*Dookeran* Action") and *Li v. Xunlei Limited et al.,* No. 1:18-cv-00646-RJS (the "*Li* Action").

[2]  Specifically, plaintiffs in the Actions allege that all defendants violated Section 10(b) of the Exchange Act and rule 10b-5 promulgated under the Exchange Act, as well as Section 20(a) of the Exchange Act.

[3]  Movant's certification identifying his transactions in Xunlei ADS, as required by the PSLRA, as well as a chart identifying his losses are attached to the declaration of Adam M. Apton ("Apton Decl."), dated March 20, 2018 as Exhibits A and B, respectively.

claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class.[4]

The PSLRA provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and have made a *prima facie* showing that he is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.  *See In re Razorfish, Inc. Secs. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002).  Movant satisfies both requirements.

## STATEMENT OF FACTS

Xunlei is a cloud-based acceleration technology company operating an internet platform in China based on cloud technology to enable users to access, manage, and consume digital media content. ¶ 16.[5] The Company's main product is OneCloud, a network linked storage device *allowing* multiple users to share online storage remotely and a "mining machine" for users to share their idle bandwidth with Xunlei's content delivery networks. ¶ 17. Throughout the Class Period, the Complaint alleges that Defendants made false and/or misleading statements and failed to reveal: (1) Xunlei had engaged into an unlawful financial activity; (2) OneCoin was a form of disguised ICO; (3) Xunlei was engaged into the promotion of an Initial Miner Offering ("IMO"); and (4) as a result of the foregoing, Defendants' statements about Xunlei's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis. ¶ 23.

---

[4]     The "Class" consisting of all persons and entities that acquired Xunlei ADS during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

[5] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "Complaint") filed in the *Dookeran* Action.  The facts set forth in the Complaint are incorporated herein by reference.

At the start of the Class Period on October 10, 2017, Xunlei issued a press release announcing the introduction of *OneCoin* to the market on October 12, 2017, a blockchain-based product with no central bank endorsed value. ¶ 18. The coin could be used to purchase Xunlei's products, goods and services including extra storage on its cloud service, or faster download speeds for its torrent downloader software. *Id.*

On November 16, 2017 Xunlei issued a press release announcing the Company's financial and operating results for the third quarter 2017. ¶ 19. The release stated in relevant part, that the Company was "transforming itself" by "developing innovative cloud computing products and exploring emerging blockchain technology." *Id.* That same day, Xunlei held a conference call discussing these fiscal results. ¶ 20. During that call, Individual Defendants not only reiterated their optimism towards blockchain technology and *OneCoin*, but also ensured that the Company "work[s] closely with the regulatory authorities in China and [follows] all the local regulations and laws." ¶¶ 20-22.

The truth begins to emerge on November 24, 2017, when various Chinese news outlets reported Xunlei's business partner Shenzhen Xunlei Big Data Information Services Company Ltd. ("Big Data") was accusing Xunlei of conducting an unlawful ICO through the *OneCoin* project. ¶ 24. On this news, the Company's ADS price fell $6.33, or 25.41% over two trading days, to close at $18.58 on November 28, 2017. ¶ 25.

On November 28, 2017, the Company issued a press release, announcing that its business relationship with Big Data had officially been terminated. ¶26.  On this news, the Company's ADS price fell $5.78, or 31.1%, to close at $12.80 on November 29, 2017. ¶ 27.

In the Xunlei's November 2017 Press Release, the Company once again ensured that all "business activities are in compliance with relevant laws and government regulations." ¶ 28.

3

Additionally, in the Company's December 2017 Press Release, Xunlei announced that it had renamed *OneCoin* to *Lianke* and that the Company would help Chinese authorities to "crackdown" on illegal trading practices. ¶ 29.

The truth fully emerged on January 12, 2018 when the National Internet Finance Association of China, a national organization initiated by the People's Bank of China, issued a "Risk Alert" notice on "Disguised ICO Activities." The notice stated in relevant part that *Lianke* (formally known as *OneCoin*) was essentially a "form of disguised ICO" and that the Company "lured many citizens" into IMO activities. *Id.*  On this news, the Company's ADS price fell $6.27, or 27.38%, to close at $16.63 on January 12, 2018. ¶ 32.

## ARGUMENT

### I. THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id*.

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a).  "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)). Consolidation is particularly appropriate in securities class action litigation. *See Mitchell v. Complete Mgmt., Inc.*, No. 99-CV-1454 (DAB), 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public

statements and reports' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The Actions present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct. The Actions name the substantially the same parties as defendants. Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Celotex Corp.*, 899 F.2d at 1285.

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Here, a prompt determination is reasonable and warranted under Rule 42(a), given the common questions of fact and law presented by the Actions now pending in this District.

## II.     THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A.     The Procedure Required by the PSLRA

Once the Court decides the consolidation motion, the PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead

plaintiff.  15 U.S.C. § 78u-4(a)(3)(A).  The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff.  15 U.S.C. §§ 78u-(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa)  has either filed the complaint or made a motion in response to a notice;
>
> (bb)  in the determination of the court, have the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and are not aware of any unique defenses that Defendants could raise against it.  Therefore, Movant is entitled to the presumption that he is the most adequate plaintiffs to represent the Class and, as a result, should be appointed Lead Plaintiff in the Actions.

### 1. Movant is Willing to Serve as Class Representative

On January 19, 2018, counsel in the first-filed action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against Xunlei and which advised putative class members that they had sixty days from the filing of the Notice to file a motion to seek appointment as a lead

plaintiff in the action.[6]  Movant has reviewed a complaint filed in the pending Actions and have timely filed his motion pursuant to the Notice.

### 2. Movant has the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action.  As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class.  *See* Apton Decl., Ex. B.  The movant or movants with the largest financial interest and who meets the requirements of typicality and adequacy under Rule 23 is presumptively the lead plaintiff.  *See Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001).

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period.  15 U.S.C. § 78u-4(e).

During the Class Period, Movant purchased Xunlei ADS in reliance upon the materially false and misleading statements issued by defendants, and was injured thereby.  Movant suffered a substantial loss of $216,469.26.  *See* Apton Decl., Exhibit B.  Movant thus has a significant financial interest in the outcome of this case.  To the best of his knowledge, there is no other applicant who has sought, or is seeking, appointment as lead plaintiff that has a larger financial interest and also satisfies Rule 23.

---

[6]  The *Dookeran* Action was filed in this Court on May 10, 2017.  The next day, the Notice was published over *Globe Newswire,* a widely circulated national business-oriented wire service.  *See* Apton Decl. Exhibit C.

**B.     Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

With respect to the qualifications of a class representative, Rule 23(a) requires generally that representatives' claims be typical of those of the class, and that representatives will fairly and adequately protect the interests of the class. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman v. Lumenis, Ltd.,* No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *5-6 (S.D.N.Y June 18, 2003); *Weltz,* 199 F.R.D. at 133 (considering only typicality and adequacy on a motion as lead plaintiff); *see also In Party City Secs. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999). *See generally* Fed. R. Civ. P. 23(a)(3)-(4). Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *Weinberg,* 216 F.R.D. at 252. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See id.; Weltz,* 199 F.R.D. at 133; *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying his appointment as Lead Plaintiff.

### 1.  Movant's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class."  Movant plainly meets the typicality requirement of Rule 23 because (i) he suffered the same injuries as the absent class members; (ii) he suffered as a result of the same course of conduct by defendants; and (iii) his claims are based on the same legal issues.  *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which the other class members' claims and injuries arise"); *see also Milestone Scientific,* 183 F.R.D. at 414-415.  Rule 23 does not require that the named plaintiff be identically situated with all class members.  It is enough if their situations share a common issue of law or fact.  *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984).  A finding of commonality frequently supports a finding of typicality.  *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with the claims of the other Class members.  Movant, like the other members of the Class, acquired Xunlei ADS during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and were damaged thereby.  Thus, his claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and his losses result from Defendants' common course of wrongful conduct.  Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3).  *See Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### 2. Movant Will Adequately Represent the Class

Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B); *see Drexel Burnham,* 960 F.2d at 291; *Weltz,* 199 F.R.D. at 133.

Movant's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses he has suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with Movant's identical interests with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class. In addition, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Therefore, Movant will prosecute the Actions vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, he is, therefore, the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Actions.

### III. MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as this one, and are well-qualified to represent the Class. *See* Apton Decl. Ex. D (the firm resume of Levi & Korsinsky).

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) consolidate the Actions, (2) appoint Movant as Lead Plaintiff for the Class in the Action; and (3) approve Levi & Korsinsky as Lead Counsel for the Class.

Dated: March 20, 2018              Respectfully submitted,

**LEVI & KORSINSKY LLP**

/s/ Adam M. Apton_____
Nicholas I. Porritt
Adam M. Apton
30 Broad Street
24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Counsel for Movant-Proposed Lead Plaintiff Hesong Sun*