## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re XUNLEI LIMITED SECURITIES LITIGATION | **Case No. 18-cv-467 (RJS)**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### AMENDED CLASS ACTION COMPLAINT

Lead Plaintiffs Tongyan Wang and Yuyan Jia and additional named plaintiff Peng Li (collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants, allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, news articles and press releases published by and regarding Xunlei Limited ("Xunlei" or the "Company") and its cryptocurrency program, analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of persons other than defendants who purchased or otherwise acquired Xunlei's American Depositary Shares ("ADSs") between October 10, 2017, and January 11, 2018, both dates inclusive (the "Class

Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and its Chief Executive Officer ("CEO"), Lei Chen.

2. Xunlei is an internet company operating primarily in China that provides a range of services designed to make the internet faster and more useful, including content delivery network (CDN), download acceleration, video and gaming acceleration, and distributed cloud storage. Founded in 2003, the Company is headquartered in Shenzhen, the People's Republic of China, and its ADSs trade on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "XNET." Under the leadership of Defendant Lei Chen, Xunlei claims to use blockchain technologies to make its services efficient and robust.

3. Blockchain is a distributed architecture, where the resources of participants instead of centralized servers are used to obtain computing power, bandwidth, and storage. In exchange, the participants are rewarded for their contributions, generally with cryptocurrency. Xunlei's architecture works as follows:

- First, Xunlei's consumer users purchase a hardware device called "OneThing Cloud" or "OneCloud," which allows Xunlei's blockchain to access the user's unused storage, computational abilities and bandwidth. Xunlei raises substantial funds from the sale of OneThing Cloud devices.

- Second, through the network of OneThing Cloud devices, users provide their excess storage capacity, computational abilities and bandwidth to Xunlei in exchange for a cryptocurrency issued by Xunlei, initially called OneCoin (WanKeBi in Chinese) and now renamed LinkToken (LianKe in Chinese). This

process of exchanging computing resources for cryptocurrency is generally referred to as "mining."

- Third, users can trade the cryptocurrency they earn on third-party exchanges, or exchange them with Xunlei for extra internet services that would otherwise cost hard currency.

4. The Class Period begins on October 10, 2017, after Xunlei issued a press release announcing that it would commence issuing and circulating OneCoin cryptocurrency to users who purchased and installed its OneThing Cloud device. The press release did not disclose that Xunlei's offering was prohibited by Chinese regulations, which had expressly banned initial coin offerings ("ICOs") in September 2017 and had not authorized initial miner offerings ("IMOs"), a disguised form of an ICO.

5. From inception, OneCoin was promoted as a means for users of OneThing Cloud to earn cryptocurrency. Indeed, the initial name for the project – OneCoin or WanKeBi – incorporates the Chinese symbol for currency: 玩客币 (WanKeBi) - 币 (Bi) signifies "currency" in Chinese. Even today, Xunlei's OneThing Cloud website states that investing in the device purchase allows users to "[g]et richer by sharing idle bandwidth, storage space, and computing resources." *See* http://www.onethingcloud.com/us/site/index.html. And throughout the Class Period, Xunlei's wallet app into which the cryptocurrency was deposited allowed the cryptocurrency to be transferred to third-party exchanges, facilitating the trading of OneCoin/LinkToken for hard currency (or other cryptocurrencies like Bitcoin or Ethereum that could themselves be exchanged for hard currency).

6.      Investor expectations for Xunlei's cryptocurrency program made Xunlei's stock one of the best performing stocks in the world over the next six weeks, boosting shares from under $5 to a high of $27.00:



7.      On or about November 28, 2017, Chinese news outlets reported that Yu Fei, then Senior Vice President of Xunlei and Chairman of Xunlei's partially-owned subsidiary and business partner Shenzhen Xunlei Big Data Information Services Company Ltd. ("Xunlei Big Data"), admitted that the OneCoin project was a disguised ICO in violation of Chinese regulations.   As a result of this news, the Company's ADS price declined on November 28, 2017 from the prior day close of $21.01 to $18.58, a drop of approximately 11.6%.

8.      Xunlei promptly punished Yu Fei for her candor.  On November 29, 2017, Xunlei announced that it had suspended Yu Fei from her role at Xunlei, and that she had resigned from Xunlei Big Data.  Xunlei also announced that it was cutting ties with Xunlei Big Data, and that Xunlei Big Data would no longer be permitted to use its trademarks.  On this news, the Company's ADS price declined $5.78 from a close on November 28, 2017 at $18.58 per ADS, to a close at $12.80 per ADS on November 29, 2017, a drop of approximately 31.1%.

9.      To reverse this slump in share prices, Defendant Chen falsely reassured investors that Xunlei's OneCoin offering and OneThing Cloud complied with the Chinese regulations. These assurances were effective – over the course of December 2017 and early January 2018, Xunlei stock resumed its uptrend.

10.     On January 12, 2018, the National Internet Finance Association of China, a national organization initiated by multiple ministries, commissions and the People's Bank of China, issued a "Risk Alert" notice on "Disguised ICO Activities," stating in relevant part:

> The Announcement on Guarding against ICO Risks, jointly issued by 7 ministries including the People's Bank of China in September 2017, clearly pointed out that ICO activities are suspected of involving illegal criminal activities including illegal fund-raising, illegal issuance of securities, and illegal sale of notes and bonds and that all institutions and individuals should immediately stop engaging in ICO activities. With the gradual phasing out of ICO projects nationwide, Initial Miner Offerings (IMO), represented by the token Lianke (formerly known as Wankebi) issued by Xunlei, has emerged as a potentially risky model that warrants vigilance.
>
> Since last October, a series of "virtual digital assets" have been issued, including Lianke, LLT, and BFC Points. ***In the case of Lianke issued by Xunlei, for example, the issuing company in effect substitutes Lianke for the duty to pay back project contributors with legal tender, making it essentially a financing activity and a form of disguised ICO. In addition, with frequent promotional activities and publishing of trading tutorials, Xunlei has lured many citizens without sound discernment into IMO activities.***

(Emphasis added.)

11.     On this news, the Company's ADS price declined $6.27 from a close on January 11, 2018 at $22.90 per ADS, to a close at $16.63 per ADS on January 12, 2018, a drop of approximately 27.38%.

12.     As a result of Defendants' wrongful acts and omissions, Xunlei shares lost hundreds of millions of dollars of market capitalization, causing significant damages to Plaintiffs and other Class members.

**JURISDICTION AND VENUE**

13.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

15.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Xunlei's ADSs trade on the NASDAQ, located within this Judicial District.  Additionally, Xunlei shares are deposited in this Judicial District with Xunlei's depositary of record, Bank of New York Mellon, to facilitate the offering of and trading in Xunlei ADSs, and are administered by the depositary at its offices located at 101 Barclay Street, New York, New York 10286.

16.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

17.     Plaintiffs Tongyan Wang and Yuyan Jia, a married couple, acquired Xunlei securities at artificially inflated prices during the Class Period as set forth in their previously-filed Certifications, and were damaged upon the disclosure and/or materialization of the risks concealed by Defendants' Class Period misrepresentations and omissions.

18.     Plaintiff Peng Li, as set forth in his previously filed Certification, acquired Xunlei securities at artificially inflated prices during the Class Period and was damaged upon the

6

disclosure and/or materialization of the risks concealed by Defendants' Class Period misrepresentations and omissions.

19.     Defendant Xunlei is incorporated in the Cayman Islands, with its principal executive offices located at 7/F Block 11, Shenzhen Software Park, Ke Ji Zhong 2nd Road, Nanshan District Shenzhen, 518057, The People's Republic of China.  Xunlei's ADSs trade on the NASDAQ under the ticker symbol "XNET."

20.     Defendant Lei Chen ("Chen") has served as the Company's CEO and Director since July 6, 2017, and as its Co-CEO from November 17, 2015 to July 6, 2017.

21.     Chen possessed the power and authority to control the contents of Xunlei's public statement, and did control the contents of such statements.  Chen spoke on behalf of Xunlei on conference calls and to the press, and was quoted in Xunlei's press releases.  He was provided with copies of the Company's press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of his positions at Xunlei and domination over the Company, and his access to material information available internally but not to the investing public, Chen knew that the adverse facts specified herein had not been disclosed to and were being concealed from investors, and that the positive representations being made were then materially false and misleading.

## **SUBSTANTIVE ALLEGATIONS**

### **Xunlei Begins To Experiment With Crowdsourcing Computer Resources**

22.      Xunlei is an internet services company operating primarily in China. Xunlei provides cloud-based acceleration services to make downloads, video streaming, online gaming and other internet usage faster and more efficient.  Xunlei also provides cloud storage technology

enabling users to access, manage, and consume digital media content.  In 2014, Xunlei offered ADS shares on the NASDAQ stock exchange, where they trade under the symbol "XNET."

23.     After commencing operations in 2003, Xunlei operated for several years primarily as a subscription-based provider of download torrent acceleration services, used in large part to facilitate downloads of pirated video, audio and software.  In exchange for a monthly subscription fee, users were permitted to leverage Xunlei's network to increase their download speed.  However, as Xunlei has noted, for several years its PC-based download subscriptions had declined, "partly due to the ongoing and increased government scrutiny of internet content in China."  *See* Form 20-F filed on April 20, 2015.  In particular, the availability of pirated content to download was threatened by a crackdown following a ruling from the Supreme People's Court of China in December 2012 providing that internet service providers must remove not only links or content specifically identified by the rights holder as infringing, but also links or content they "should have known" to contain infringing content.  *Id.*

24.     Xunlei's other main product line was known as a content delivery network.  A CDN is a service sold to enterprise customers that makes their media more quickly available to internet consumers, by distributing the media throughout a network of local nodes, avoiding the bottlenecks and lengthy transmission times of a central, and often distant, server:



Source: https://www.globaldots.com/content-delivery-network-explained/.   However, to provide an effective CDN service, a CDN provider must develop a broad network of local nodes through which it can offer delivery.  This can be extremely expensive if the CDN provider builds out the node network on its own.

25.    To offset the decline in its core download acceleration business, and to provide a cheap and efficient source of nodes for its CDN service, Xunlei launched "Project Crystal," a decentralized, cloud-based system that crowdsourced its "users' computing power for bandwidth and storage."  *See* Form 20-F filed on April 20, 2015.  In 2017, Project Crystal developed into a commercial product launched under the name Xunlei Zhuanqian Bao, or ZQB, which literally translates into "Xunlei Make Money Treasure."  The ZQB device was a hardware box which enabled users to make a private cloud for the storage and exchange of their own files (similar to Google Drive or Dropbox), and also to "Make Money" by providing their idle bandwidth, storage and computing power to Xunlei, which used it to power content delivery network services.  And, because Project Crystal leveraged the resources of its users, Xunlei avoided the costs of purchasing the servers itself to expand its CDN network.  In September 2017, the Company launched

OneThing Cloud (also known as OneCloud), the successor to its ZQB device and Project Crystal. OneThing Cloud is a network linked storage device allowing multiple users to share online storage remotely and a "mining machine" for users to share their idle computing resources with Xunlei's content delivery networks.

### China's Crackdown on Illegal Cryptocurrency Offerings

26.     The term cryptocurrency refers to a currency that only exists digitally, that usually has no central issuing or regulating authority but instead uses a decentralized system to record transactions and manage the issuance of new units, and that relies on cryptography to prevent counterfeiting and securely record transactions. *See* https://www.merriam-webster.com/dictionary/cryptocurrency.   Significantly, because cryptocurrencies with rare exception are not issued by any central authority, they are theoretically immune to government interference or manipulation, and represent a threat to government efforts to maintain currency controls.   As economist Tyler Cowen explains, the ability to freely move Bitcoin and other cryptocurrencies is particularly attractive in China, where capital controls "are strict" and "there are. . . plenty of wealthy Chinese citizens and residents looking to move their money around the world with greater freedom."   *See* https://marginalrevolution.com/marginalrevolution/2013/11/china-and-the-soaring-price-of-bitcoin.html.

27.     Cryptocurrency offerings are often seen as predatory, enticing vulnerable investors with inflated projections promising rich returns.   On August 30, 2017, the National Internet Finance Association of China, a self-regulatory organization, issued a warning that illegal initial coin offerings threatened to "disrupt[] social and economic order and creat[e] significant risks." *See* http://www.nifa.org.cn/nifa/2955675/2955761/2967610/index.html (translated).

28.   On September 4, 2017, the People's Bank of China, Central Network Information Industry, Ministry of Industry and Information Technology, China Securities Regulatory Commission, China Banking Regulatory Commission, China Securities Regulatory Commission, and China Insurance Regulatory Commission jointly issued a ban on "all token fundraising." Among other things, the September 4, 2017 document states that:

- "The acts of illegal fund-raising, pyramid schemes and coin-vouchers, *and circulating a token not issued by the monetary authority or 'virtual currency' are considered criminal activities. . . .*"

- "From the date of this announcement, any so-called token financing transaction platform must not engage in the exchange of money, tokens, or 'virtual currency' with each other. . . ."

- "Each financial institution and non-bank payment institution shall not directly or indirectly provide products for the issuance of token financing and 'virtual currency.'"

Source: http://www.pbc.gov.cn/goutongjiaoliu/113456/113469/3374222/index.html (translated).

### Xunlei Defies China Regulators

29.   Notwithstanding the strict warnings of China's leading financial regulators, Xunlei decided in fall 2017 to engage via its OneThing Cloud consumer device in the offering and circulation of cryptocurrency.  On October 10, 2017, Xunlei announced that beginning October 12, 2017, owners of OneThing Cloud could not only use the device to manage their own cloud storage, but also to leverage their excess bandwidth, storage and computing power to "mine" a new cryptocurrency called OneCoin (WanKeBi in Chinese, or WanKe Coin), later renamed LinkToken (LianKe in Chinese).  Xunlei also provided a wallet app for these currencies, which was initially called OneCoin Wallet (WanKe Bi Qianbao in Chinese), and later renamed LinkToken Pocket (LianKe KouDai in Chinese).

30.   Despite cosmetic changes, Xunlei's OneCoin/LinkToken offered users the same economic proposition of a traditional ICO: by making an initial payment of money (here, several

hundred renminbi for the purchase price of a OneThing Cloud device), users gained access to cryptocurrency, which could then be exchanged for things that would otherwise cost hard currency, or traded on cryptocurrency exchanges.

| SAME ECONOMIC FUNCTION | |
| --- | --- |
| *Traditional ICO* | *Xunlei's Disguised ICO* |
| 1.  Investor pays issuer for cryptocurrency | 1.  Investor pays Xunlei or a distributor to buy Xunlei's OneThing Cloud hardware device. |
| 2.  Investor receives cryptocurrency | 2.  Via OneThing Cloud hardware device, investor receives OneCoin cryptocurrency |
| 3.  Investor can trade cryptocurrency on external exchanges | 3.  Investor can trade OneCoin on external exchanges |

31.     Xunlei encouraged users to buy its OneThing Cloud device by promising monetary returns from mining its cryptocurrency.  Besides using the Chinese word for currency ("bi") in its original Chinese name for OneCoin, Xunlei expressly advertised it as form of money.  Xunlei's branding emphasized that users could "Get[] richer" mining OneCoin/LinkToken, and equated the cryptocurrency with "money."  Xunlei's English-language onethingcloud.com site, for example, stresses the monetary value of its cryptocurrency rewards:



Source: http://www.onethingcloud.com/us/site/index.html.   A promotion on Xunlei's Chinese-language site, since removed, was even more bold:



That webpage, promoting the speculative aspects of Xunlei's OneThing Cloud hardware, stated "***Your private gold mine is lying there to 'make money.'*** The 'Zhangqian Bao' [literal translation: Make Money Treasure] team is making another masterpiece, a new generation of sharing economy intelligent hardware, sharing idle bandwidth, without manual operation, easily gaining income. ***A reward worth one billion yuan is waiting for you to come and achieve the dream of 'making money' while lying down***."   Source:  https://www.thepaper.cn/newsDetail_forward_1825077 (translated from Chinese, emphasis added).

32.     Like most ICOs, Xunlei created a sense of urgency by making the cost cheaper – and the economic upside greater – for OneCoin's earliest adopters.  Xunlei did this in three ways. First, Xunlei offered the devices at a discounted price for users who "pre-purchased" to ensure a solid base of initial users in the fall of 2017.  Second, in advertising copy, Xunlei stated that "Time is money" and that Xunlei's program gives greater rewards to "its earliest participants."  Third, Xunlei copied structural features from bitcoin and other cryptocurrencies to ensure that mining would be more lucrative for those who invested via early purchases of the OneThing Cloud device than for those who invested later.  Most importantly, like bitcoin itself, Xunlei designed a "halving" feature into OneCoin, meaning that the daily number of OneCoin issued to all miners on the OneThing Cloud network would be cut in half each year.  Xunlei also set limits for the maximum amounts of OneCoin that could be issued per day to 1.6 million, and stated that no more than 1.5 billion OneCoin would ever be issued. As a Chinese cryptocurrency analyst noted, these supply constraints encouraged speculation in OneCoin.   *See*  https://qz.com/1152564/the-hottest-cryptocurrency-in-china-isnt-bitcoin-its-onecoin-make-that-lianke-by-xunlei-xnet/.

33.     Like other cryptocurrencies, speculators have created markets for trading OneCoin/LinkToken, exchanging it for hard currency like yuan, or other cryptocurrencies like

Bitcoin or Ethereum.  A Class Period article explained that speculative fervor had boosted the value of OneCoin/LinkToken more than 40-fold during November 2017:

> According to a report from the Beijing News (link in Chinese), by the end of last month OneCoin traded at around 8 yuan ($1.21) in numerous chat groups on QQ, a popular social network. That means it had increased in value more than 80-fold in 40 days since its launch. What's more, the OneCloud device—that storage-cum-mining tool—was reportedly being sold online for around 2,000 yuan by enterprising types, more than five times its original price tag. Meanwhile over 24 million people have pre-ordered the device on the website of Xunlei, which has struggled to meet demand.

*See* https://qz.com/1152564/the-hottest-cryptocurrency-in-china-isnt-bitcoin-its-onecoin-make-that-lianke-by-xunlei-xnet/ (linking to http://jingji.cctv.com/2017/11/29/ARTIBfj3OVM-57bhW31gqbzRo171129.shtml).  The linked article called OneCoin the "Bitcoin of China."

34.     During and even after the Class Period, several venues were available for trading OneCoin/LinkToken.  For example, on November 24, 2017, Fatbtc, a third-party trading platform, announced that WKC (Onecoin or WanKeCoin) would be available the following day to trade online the following day.  At Fatbtc, OneCoin investors could exchange their currency (WKC) for Bitcoin (BTC), Ethereum (ETH), and Chinese Yuan (FCNY), among others.  *See* https://www.fatbtc.com/news-detail-2.htm and https://www.fatbtc.com/m/markets/WKCFAT. Trading of OneCoin/LinkToken remained available on fatbtc through at least May 17, 2018.

35.     In November 2017, popular discussion forums Jianshu and Bitcoin Talk provided detailed step-by-step instructions on how to trade OneCoin (WKC) for currency through an additional exchange, cex.com.  *See* https://www.jianshu.com/p/f67a3d4a60ec and https://bitcointalk.org/index.php?topic=2356545.0;prev_next=next.  Cryptocurrency traders were able to trade OneCoin/LinkToken on cex.com during the Class Period.

36.     Similarly, OneCoin could be traded via LinkEX during and after the Class Period. LinkEX describes itself as a "Leading OTC Digital Currency Marketplace."  *See* http://linkex.io.

Through at least May 2018, LinkEX continued to feature on its homepage links to "Buy WKC" and "Sell WKC." *Id.*

37.    During the Class Period, OneCoin (WKC) could also be traded via cryptocurrency trading site feixiahao.com, which facilitates trades cleared through onebtc as well as peer-to-peer sites.

38.    Additionally, during the Class Period, OneCoin trading was also available via chat groups, especially on China's popular QQ chat platform, and on decentralized matching platforms like playwkc.com.

39.    Several discussion forums, including a forum posted on Xunlei's website, discuss the ability to trade OneCoin via QQ chat groups.  QQ chat is a very popular instant messaging service provided by Tencent Holdings Ltd., one of China's largest internet companies.  Detailed instructions trading OneCoin on QQ chat, including group numbers for specific QQ chat groups on which OneCoin could be traded, were widely available.  *See, e.g.,* article on mining and trading OneCoin posted October 28, 2017 on https://www.jianshu.com/p/d4777aa76ca5.

40.    For those needing further assistance, tutorials were available specifying step-by-step instructions on how to trade OneCoin/LinkToken for cash such as yuan or other cryptocurrencies like Ethereum or Bitcoin.  The tutorials – which were accessible to all internet users including Defendants – advised that OneCoin/LinkToken could be withdrawn from the wallet app and deposited on exchanges popular with Chinese cryptocurrency traders such as cex.com or fatbtc.com.

41.    Xunlei continued to facilitate trading of OneCoin/LinkToken throughout the Class Period by maintaining functionality in Xunlei's wallet app allowing users to withdraw the cryptocurrency out of the app, so that it could freely be traded.  Xunlei actually advertised the

16

withdrawal functionality during the Class Period, *see* Paragraph 46, and the Chinese financial press reported that transfer restrictions were not added to Xunlei's wallet app until January 25, 2018. *See* https://www.yicaiglobal.com/news/xunlei-retools-blockchain-product-linktoken-after-regulator-labels-it-ico-disguise.

## Materially False and Misleading Statements Issued During the Class Period

42.     The Class Period begins on October 10, 2017, when Xunlei issued a press release entitled "Announcing the Start of the OneCoin Rewards Program." The press release announced that beginning October 12, 2017, consumers who invested in the purchase of its OneThing Cloud hardware device could reap OneCoin (WanKeBi in Chinese) by providing resources to Xunlei's OneCloud network. As is typically disclosed in white papers for cryptocurrency ICOs, Xunlei's October 10, 2017 press release also identified a maximum amount of OneCoin that could be issued each day, described the algorithm by which newly-mined OneCoin would be allocated among miners, described the maximum amount of OneCoin that could ever be mined, and the algorithm by which OneCoin production would diminish over time, in order to make mining more valuable for early entrants. The press release also announced a wallet program that it touted would permit users to "receive and send OneCoin."

43.     The statements identified in Paragraph 42 above were materially false and misleading when made because they omitted the following information necessary to make them not misleading under the circumstances in which they were made: (a) that Xunlei's promotion and offering of OneCoin violated Chinese regulations; (b) that the offering of OneCoin via the sale of OneThing Cloud devices was a disguised ICO; and (c) that even if it could technically be classified as an Initial Miner Offering rather than an ICO, the offering of OneCoin via the sale of OneThing

Cloud devices served the same economic function as an ICO and violated bans on token-based financings.

44.    On October 16, 2017, an article was published on Yicai Global, an English-language financial media site in China, entitled "Xunlei Denies Blockchain Product OneCoin Constitutes ICO, Says It Cannot Be Purchased or Traded In Cash." The article stated:

> OneThing Technology Co., a subsidiary of the China-based multinational internet company Xunlei Ltd. [NASDAQ:XNET], refutes claims that its new blockchain-based product OneCoin constitutes a new version of banned initial coin offering (ICO) activities, stating that it cannot be purchased or traded in cash, China news outlet ThePaper reported..… "OneCoins can only be used for the exchange of Xunlei products," ThePaper quoted Xunlei as saying.

Source: Yicai Global via Bloomberg

45.    The statements attributed to Xunlei and identified in Paragraph 44 above were materially false when made because: (a) Xunlei's OneCoin scheme was, in fact, a disguised ICO; (b) OneCoin, or WanKeBi, could be traded for other cryptocurrencies or for cash; and (c) OneCoin use was not limited "to the exchange of Xunlei products."

46.    On October 19, 2017, Xunlei published on the Chinese version of its OneThing Cloud domain a statement acknowledging that Xunlei was aware of illegal trading of OneCoin. Specifically, this statement, which was omitted from the English language version of the same site, acknowledged: "Recently the OneCloud team found illegal OneCoin trading platforms within the network" *See* http://onethingcloud.cn/news/page/24.html (quote translated from Chinese).  The statement emphasized that OneCoin could be "extracted" and "transferred" from their wallets.  *Id.* (quotes translated from Chinese).  By providing such functionality, Xunlei expressly enabled and encouraged users to trade OneCoin/LinkToken.

47.    On November 16, 2017, Xunlei issued a press release, also attached as exhibit 99.1 to the Form 6-K filed with the SEC on November 20, 2017, announcing the Company's financial

and operating results for the third fiscal quarter and nine month ended September 30, 2017 ("Q3 2017 Press Release"). The press release stated in relevant part:

### XUNLEI ANNOUNCES UNAUDITED FINANCIAL RESULTS FOR THE THIRD QUARTER ENDED SEPTEMBER 30, 2017

Shenzhen, China, November 16, 2017 (GLOBE NEWSWIRE) – Xunlei Limited ("Xunlei" or the "Company") (Nasdaq: XNET), a leading cloud-based acceleration technology company in China, today announced its unaudited financial results for the third quarter ended September 30, 2017.

**Third Quarter 2017 Financial Highlights:**

- Total revenues were US$47.3 million, an 15.6% increase from the corresponding period of last year and up 14.0% from the previous quarter.

- Online advertising revenues (revenues primarily from mobile advertising) were US$5.7 million, a 22.9% increase from the corresponding period of last year and a 9.7% increase from the previous quarter.

- Other internet value-added services ("IVAS") revenues were US$20.8 million, a 64.9% increase from the corresponding period of last year and a 32.4% increase from the previous quarter. IVAS consists of cloud computing and services other than subscription and advertising.

**Recent Developments:**

- Received value-added telecommunication services license, which covered the provision of CDN services, from the Ministry of Industry and Information Technology of P.R.C. (MIIT).

- Successfully launched OneThing Cloud, an intelligent private cloud hardware, on JD.com and other e-commerce platforms in September. It received nearly 100% positive reviews and the accumulated reservations have lately exceeded 8 million units.

- Awarded information security certification issued by Shenzhen municipal government for OneThing CDN systems.

- Started to expand the applications of crowd-sourced computing beyond the CDN market.

Mr. Lei Chen, Chief Executive Officer of Xunlei, commented: "We are pleased that our cloud computing business continued to expand at a fast pace and gain market recognition during the third quarter of 2017. Our total revenues for the past quarter exceeded the high end of our guidance range. We expect the growth momentum to

continue into the fourth quarter of 2017 with improvement in both the top and the bottom lines."

*"Xunlei is transforming itself from a traditional internet service provider of membership subscription to a growth-oriented company developing innovative cloud computing products and exploring emerging blockchain technology. Our crowd-sourced computing technology utilizes idle computing power including bandwidth, storage and CPU from individual bandwidth contributors to make internet more affordable to everyone. Our clients and strategic partners include some of the household names in China. We believe this is a testimony of the power of shared economy."* continued Mr. Lei Chen.

"We believe blockchain technology today is reminiscent of the internet technology in the 80's when the users of the internet were primarily enterprises. With millions of DAUs of Xunlei APPs and subscription members, we have the natural advantage of developing blockchain technology and exploring its applications to the mass markets. Although it is of great challenge, we are hopeful and excited about our potential contribution to the internet industry." concluded Mr. Lei Chen.

(Emphasis added.)

48.    The statements identified in Paragraph 47 above were materially false and misleading when made because they omitted the following information necessary to make them not misleading under the circumstances in which they were made: (a) that Xunlei's promotion and offering of OneCoin violated Chinese regulations; (b) that the offering of OneCoin via the sale of OneThing Cloud devices was a disguised ICO; (c) that even if viewed as an Initial Miner Offering rather than an ICO, the offering of OneCoin via the sale of OneThing Cloud devices served the same economic function as an ICO and violated bans on token-based financings; and (d) as a result of the foregoing, Defendants' statements about Xunlei's business, operations, and prospects, were materially false and misleading.

49.    That same day, during a conference call to discuss the Company's financial and operating results for the third fiscal quarter and nine months ended September 30, 2017("Q3 2017 Conf. Call"), Xunlei's CEO, Defendant Chen stated in relevant part:

We also introduced a voluntary OneThing incentive program based on OneThing Cloud. By enrolling into this program, users give permissions to us to use their idle

bandwidth storage and CPU through OneThing Cloud and receive a blockchain based crypto token as reward. This program is also fairly popular among OneThing Cloud users.

The introduction of the new device and blockchain improves our crowd-sourced computing business. The device offers better hardware configuration, which allows us to go beyond CDN domain, and offer new types of services to our customers. We already started testing with one of our top customers. Blockchain technology allows us to construct an automated, efficient and trustworthy reward mechanism. It is a crucial building block to the crowd-sourced computing ecosystem.

50.     The statements identified in Paragraph 49 above were materially false and misleading when made because they omitted the following information necessary to make them not misleading under the circumstances in which they were made: (a) that Xunlei's promotion and offering of OneCoin violated Chinese regulations; (b) that the offering of OneCoin via the sale of OneThing Cloud devices was a disguised ICO; and (c) that even if viewed as an Initial Miner Offering rather than an ICO, the offering of OneCoin via the sale of OneThing Cloud devices served the same economic function as an ICO and violated bans on token-based financings.

51.     During the Q3 2017 Conf. Call, when asked about what Xunlei would do with OneCoin, Defendant Chen answered:

Okay, I see. The company has no plan to monetize over the coin at all. And as I said before, the crypto token is rewarded to users who volunteer in the OneThing reward program to encourage users to share idle bandwidth storage and the CPU computing for its leverage. That is volunteer program and is set up separate from the sales of the OneThing Cloud product itself.

So, I'd like to just explain a little bit about the – about it. So, OneThing Cloud as a product is priced at a slightly lower the market, the competitive market for equivalent products that are offered by other companies. And so, after purchasing OneThing Cloud, the user has an option to enroll into a voluntary program and to share their computing power and we rewarded it by this crypto token. From the beginning we as company has no plan at all to monetize on this coin, and we certainly do not in the future.

52.     The statements identified in Paragraph 51 above were materially false and misleading when made because Xunlei had already monetized its cryptocurrency, by using it to

purchase computing resources from OneThing Cloud users for which it would otherwise have to spend hard currency to obtain.

53.     When asked about the difference between the Company's reward system using OneCoin and an ICO, Defendant Chen answered:

> Well, the explanation – the definition of ICO I think we're as a private company we're not in the position to comment what is the very definition of ICO. But what I can tell our investors is that, we work closely with the regulatory authorities in China and we follow all the local regulations and laws. And we conduct business, we have been conducting business and we will conduct business in a manner that is honest and responsible, and meet all the regulations as law requirements.

54.     The statements identified in Paragraph 53 above were materially false and misleading when made because: (a) Xunlei did not follow all regulations and laws; and (b) the statements omitted that Xunlei's OneCoin/LinkToken program was functionally equivalent to an ICO, information which was necessary to make the statements not misleading under the circumstances in which they were made.

## The Truth Begins to Emerge

55.     On or about November 28, 2017, Xunlei indicated on its Weibo social media account that Xunlei's business partner Shenzhen Xunlei Big Data Information Services Company Ltd. ("Xunlei Big Data") was no longer authorized to use Xunlei trademarks and branding.

56.     Yu Fei and Xunlei Big Data issued a response hours later, indicating that Xunlei's Weibo post was Defendant Chen's reaction to Xunlei Big Data's refusal to support unlawful OneCoin activities:

Source: http://tech.sina.com.cn/i/2017-11-29/doc-ifypceiq5842523.shtml.  Translated, the body of

Xunlei Big Data's November 28, 2017 response stated:

**Xunlei Big Data did not receive any violation of agreement notice from the Group. The online announcement serves as Chen Lei and OneCoin's retaliatory measure.**

1. Xunlei Big Data and its subsidiaries, including Xunlei Financial Corporation, are companies approved & established by Xunlei's Board of Directors, and moreover invested in by Xunlei. Its trademark use rights and traffic resources are protected by the agreement.

2. Xunlei Big Data and Xunlei Financial Corporation, whose character names are legally registered, are protected by law, there exists no talk of withdrawing the brands, and going

forward the Xunlei Big Data and Xunlei Financial Corporation logos will still be used to conduct business.

3. At present, Xunlei Big Data has not received any notice from Xunlei Group that it intends to violate the investment agreement, and online rumors are not true.

4. *The source of internet rumors is Chen Lei*, the person in charge of Xunlei's subsidiary Wangxin and who is conveniently the CEO of Xunlei at the same time, *and are in retaliation for Xunlei Big Data's unwillingness, within the context of Chen Lei developing OneCoin's illegal activities, to associate with a criminals' unilateral behavior,* rather than an expression of violation of the agreement after a careful decision making process in accordance with Xunlei Group's corporate governance procedures.

5. *Chen Lei's unlawful issuance of OneCoin does not use any blockchain technology. It is in violation of 7 ministries' documents, takes advantage of illegal exchanges, illegal group pyramid schemes, is a disguised ICO, and is an illegal fund-raising scam.*

6. *The person in charge of Xunlei Big Data has also been questioned by the regulatory authorities because of OneCoin's illegal operating behavior and will actively cooperate with the regulatory investigation.*

Shenzhen Xunlei Big Data Information Service Co., Ltd.

(Emphasis added.)

57.     On this news, the Company's ADS price declined on November 28, 2017 from the prior day close of $21.01 to $18.58, a drop of approximately 11.6%.   An article published on Technode indicated that the drop was linked to Xunlei Big Data's revelations.   *See* https://technode.com/2017/11/29/xunlei-stock-price-slipped-1/.

58.     On November 29, 2017, Xunlei issued a press release entitled "Xunlei Provides Clarification on Recent Market Development," announcing an update on its business relationship with Big Data. Therein, Company stated in relevant part:

SHENZHEN, China, Nov. 29, 2017 (GLOBE NEWSWIRE) -- Xunlei Limited ("Xunlei" or the "Company") (Nasdaq:XNET), a leading cloud-based acceleration technology company in China, provided the following clarification on the recent market development.

Currently, Xunlei has 28.77% equity interest in Shenzhen Xunlei Big Data Information Services Company Ltd. ("Big Data") and has no management control over Big Data. In response to certain public statements made by Big Data recently,

the board of directors of the Company ("Board") issued an open letter and firmly supported the Company's endeavor to utilize its many years of technical know-how in the field of distributed computing to explore commercial applications with the help of blockchain technology.

To protect the interests of the Company, with the approval of the Board, the Company has requested Big Data to stop using the "Xunlei" brand name immediately and also terminated its right to use the "Xunlei" brand.

For the past five consecutive years, Xunlei has been selected as one of the Top 100 Internet Companies In China jointly by Internet Society of China and MIIT. As a listed company, Xunlei's policy is to abide by applicable laws and government regulations, implement corporate governance and operate strictly under the guidance of the Board.

To ensure sustainable operations and to protect all stake holders, the Company will maintain and engage in proactive communications with authorities and implement an ID registration system in mid-December for the operation of Wankebi and other preventive measures to ensure that the operation of Wankebi and other business activities are in compliance with relevant laws and government regulations.

The Company believes that Wankebi is a kind of digital asset and can be used on the Company's internet properties and should not be traded on other transaction platforms. When developing blockchain technology, the Company utilizes such features as openness, transparence and security for their applications. Wankebi is only a symbol of proof for these applications, rather than a subject of speculation.

59.     This "clarification" raised more questions than it answered regarding the legality of Xunlei's cryptocurrency program. As noted in *Seeking Alpha*, the concerns raised by Yu Fei and Xunlei's press release were "driving some investors to the exits." *See* https://seekingalpha.com/news/3315142-xunlei-minus-22-percent-issues-clarifier-big-data-relationship. As a result, Xunlei ADS further declined $5.78 on November 29, 2017, to a close at $12.80, a drop of approximately 31.1%.

60.     On December 9, 2017, Xunlei issued a press release stating that it would change the name of OneCoin (WanKeBi in Chinese) to LinkToken (Lianke in Chinese), and would change the name of the wallet app from OneCoin Wallet (WanKe Bi Qianbao in Chinese) to LinkToken Pocket (LianKe Koudai in Chinese). The press release also indicated that Xunlei would cooperate

with authorities to launch a crackdown on "illegal trading," and would, after a buffer period, limit transfer functionality to users who had registered under a real name. On this news, which investors took to be positive steps relating to compliance with Chinese laws and regulations, Xunlei ADS's rose by 29% from $11.98 to $15.50 when trading resumed on December 11, 2017.

61.     On January 12, 2018, the National Internet Finance Association of China, a national self-regulatory organization formed by multiple ministries, commissions and the People's Bank of China, issued a "Risk Alert" notice admonishing Xunlei for attempting to flaunt the ICO ban by engaging in "Disguised ICO Activities." The "Risk Alert" called Xunlei's scheme a "potentially risky model that warrants vigilance" and criticized "frequent promotional activities" and "trading tutorials":

> The Announcement on Guarding against ICO Risks, jointly issued by 7 ministries including the People's Bank of China in September 2017, clearly pointed out that ICO activities are suspected of involving illegal criminal activities including illegal fund-raising, illegal issuance of securities, and illegal sale of notes and bonds and that all institutions and individuals should immediately stop engaging in ICO activities. With the gradual phasing out of ICO projects nationwide, Initial Miner Offerings (IMO), represented by the token Lianke (formerly known as Wankebi) issued by Xunlei, has emerged as a potentially risky model that warrants vigilance.

> Since last October, a series of "virtual digital assets" have been issued, including Lianke, LLT, and BFC Points. *In the case of Lianke issued by Xunlei, for example, the issuing company in effect substitutes Lianke for the duty to pay back project contributors with legal tender, making it essentially a financing activity and a form of disguised ICO. In addition, with frequent promotional activities and publishing of trading tutorials, Xunlei has lured many citizens without sound discernment into IMO activities.*

> NIFA hereby calls on consumers and investors to gain a clear understanding of the nature of relevant models, strengthen awareness of risk prevention, make investments rationally, and refrain from blindly following speculation and hype. Any illegal financial activities in the form of IMO, ICO activities targeting domestic residents through deployment of foreign servers, and exchange services for "virtual currencies", once found, can be reported to relevant regulatory agencies or NIFA. Any such activities suspected of violating criminal laws can be reported to the police. NIFA members should enhance self-regulation, resist illegal financial activities, and refrain from participating in any activities involving ICO or speculation in "virtual currencies".

(Emphasis added.)

62.     On this news, the Company's ADS price declined $6.27 from a close on January 11, 2018 at $22.90 per ADS, to a close at $16.63 per ADS on January 12, 2018, a drop of approximately 27.38%.

63.     As a result of Defendants' Class Period misrepresentations and omissions, and the precipitous decline in the market value of the Xunlei securities following the disclosure and/or materialization of the risk concealed by these misrepresentations and omissions, Plaintiffs and other Class members have suffered significant losses and damages.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Xunlei securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are: (i) defendants herein; (ii) current and former officers and directors of Xunlei, or of any subsidiary of Xunlei; (iii) immediate family members, legal representatives, heirs, successors or assigns of any of the individuals identified in (i) and (ii) above; and (iv) any entity in which any such individual or individuals have or had a controlling interest.

65.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Xunlei ADS securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown and unascertainable to Plaintiffs at this time, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Xunlei, its transfer agent, or the ADS depositary, and may be notified of the

27

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

67.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.  Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

68.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about Xunlei's OneCoin scheme and the business, operations and management of Xunlei;

- whether Defendant Chen caused Xunlei to issue false and misleading statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading statements;

- whether the prices of Xunlei securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

70.    Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- During the Class Period, defendants made public misrepresentations of material facts and failed to disclose material facts necessary to make the statements they publicly made during the Class Period not misleading under the circumstances in which they were made;

- Xunlei ADS securities are traded in an efficient market;

- the Company's ADS shares were liquid and traded with moderate to heavy volume during the Class Period;

- Xunlei's ADS traded on the NASDAQ and were covered by multiple analysts, journalists, and industry commentators;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold Xunlei securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

71.    Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

72.    Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

73.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

74.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

75.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Xunlei ADS securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Xunlei ADS securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

76.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the misleading press releases, statements to journalists and conference call statements identified above designed to impact the market for Xunlei securities.  Such press releases and statements were materially false and misleading in that they failed to disclose material adverse information regarding Xunlei's illegal cryptocurrency program, and misrepresented the truth about Xunlei's business and business

prospects.   Specifically, as detailed above, defendants issued statements falsely describing Xunlei's OneCoin/LinkToken as a legitimate reward program, when in fact it was an illegal disguised ICO and/or a risky and unsanctioned Initial Miner Offering.

77.     By virtue of his position at Xunlei, Chen had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Chen acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to him.

78.     Information showing that Chen and Xunlei acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.   As the Chief Executive Officer and Director of Xunlei, Chen had knowledge of the details of Xunlei's disguised ICO activities.   Additionally, Chen portrayed himself to investors as having knowledge about the operation of OneCoin/LinkToken and Chinese regulations restricting cryptocurrency financing and speculation (as did Xunlei itself).   Said acts and omissions were committed willfully or with reckless disregard for the truth.   In addition, Chen and Xunlei knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

79.     As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Xunlei ADS securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning Xunlei's business and financial condition which were concealed by defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Xunlei ADS securities at artificially inflated prices and

relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

80.     During the Class Period, Xunlei securities were traded on an active and efficient market.  Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Xunlei securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Xunlei securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class.  The market price of Xunlei securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

81.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Chen is liable both directly and indirectly for the wrongs complained of herein.  Because of his dominant position of control and authority, Chen was able to and did control the content of the statements of Xunlei.  Chen had a duty as an officer and director of a publicly-traded company to disseminate timely, accurate, and truthful information with respect to Xunlei's businesses, operations, and prospects.

82.     As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure of

the truth, or materialization of the risks, concealed by Defendants' Class Period misrepresentations and omissions.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against Chen)

83.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.    During the Class Period, Defendant Chen exercised a dominant influence and control over the operation and management of Xunlei, and conducted and participated, directly and indirectly, in the conduct of Xunlei's business affairs.  Because Chen participated in the design and promotion of the OneCoin/LinkToken program, and claimed to understand the legal restrictions regarding ICOs and cryptocurrency speculation, he was aware of the adverse non-public information about Xunlei's cryptocurrency program.

85.    As an officer and directors of a publicly owned company, Chen had a duty to disseminate accurate and truthful information with respect to Xunlei's businesses, including its OneCoin/LinkToken program, and to correct promptly any public statements issued by Xunlei which had become materially false or misleading.

86.    Because of his dominance over Xunlei, Chen was able to, and did, control the contents of the various reports, statements, and press releases which Xunlei disseminated in the marketplace during the Class Period.  Throughout the Class Period, Chen exercised his power and authority to cause Xunlei to engage in the wrongful acts complained of herein. Chen, therefore, was a "controlling persons" of Xunlei within the meaning of Section 20(a) of the Exchange Act. In this capacity, he culpably participated in Xunlei's violations of Section 10(b) of the Exchange Act.

87.     Chen, therefore, acted as a controlling person of Xunlei within the meaning of the federal securities laws, and is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Xunlei.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.      Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated: June 4, 2018

                              Respectfully submitted,

                              **POMERANTZ LLP**

                              /s/ Joshua B. Silverman
                              Patrick V. Dahlstrom
                              Joshua B. Silverman
                              Omar Jafri
                              10 South La Salle Street, Suite 3505
                              Chicago, Illinois 60603
                              Telephone:  (312) 377-1181
                              Facsimile:   (312) 377-1184
                              Email:  pdahlstrom@pomlaw.com
                                      jbsilverman@pomlaw.com
                                      ojafri@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiffs*