**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE XUNLEI LIMITED SECURITIES LITIGATION | Civil Action No. 1:18-cv-00467-RJS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Dated: August 3, 2018

O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

400 South Hope Street
Los Angeles, California  90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407

*Attorneys for Defendants Xunlei Limited*
*and Lei Chen*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND .............................................................................. 4

    A.    Xunlei: A Leading Chinese Internet Company......................... 4

    B.    Blockchain Technology, Initial Coin Offerings, and the Chinese Government's September 4, 2017 Pronouncement ................... 4

    C.    Xunlei's Blockchain Innovations............................................. 7

    D.    Factors That Distinguish the OneThing Cloud Rewards Program from Banned "fundraising through coin offerings" Under the Notice................................................................................. 9

    E.    The Allegedly False and Misleading Statements..................... 10

    F.    The Alleged Disclosure of "the Truth".................................. 11

ARGUMENT ............................................................................... 13

    I.    THE COMPLAINT FAILS TO STATE A SECTION 10(b) CLAIM ............... 13

        A.    Plaintiffs Fail to Plead a Material Misstatement or Omission ................ 14

            1.    *The Rewards Program Is Not Illegal Under Chinese Law* .......... 15

            2.    *The Complaint Fails to Identify Any Material Facts—as Opposed to Legal Conclusions—That Defendants Did Not Disclose or Misstated*...................................................... 17

                a.    *The Complaint Fails to Allege a Viable Omission Claim*................................................................ 18

                b.    *The Complaint Fails to Allege Any Other False or Misleading Statement*................................... 19

    II.    THE COMPLAINT FAILS TO PLEAD SCIENTER ............................. 21

        A.    The Complaint Alleges No Motive to Defraud......................... 21

        B.    The Complaint Does Not Adequately Plead Facts Showing "an Extreme Departure from the Standards of Ordinary Care" ..................... 22

        C.    The Complaint Fails to Plead Loss Causation ........................ 24

    III.    THE SECTION 20(a) CONTROL-PERSON CLAIM SHOULD BE DISMISSED ........................................................................ 25

CONCLUSION.............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*In re AOL Time Warner, Inc. Sec. Litig.*,
  503 F. Supp. 2d 666 (S.D.N.Y. 2007)......................................................................... 24

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)............................................................................... 13, 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................. 13

*Bryant v. N.Y. State Educ. Dep't*,
  692 F.3d 202 (2d Cir. 2012)...................................................................................... 4

*In re Carter-Wallace, Inc., Sec. Litig.*,
  220 F.3d 36 (2d Cir. 2000)...................................................................................... 22

*CIH Int'l Holdings, LLC v. BT United States, LLC*,
  821 F. Supp. 2d 604 (S.D.N.Y. 2011).......................................................................... 16

*In re Citigroup, Inc. Sec. Litig.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004), *aff'd sub nom. Albert Fadem Tr. v.
  Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006)............................................................. 18

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)..................................................................................... 20

*In re CRM Holdings, Ltd. Sec. Litig.*,
  No. 10 Civ. 975 (RPP), 2012 WL 1646888 (S.D.N.Y. May 10, 2012) .................................. 24

*de Fontbrune v. Wofsy*,
  838 F.3d 992 (9th Cir. 2016) .................................................................................. 16

*Eagleston v. Guido*,
  41 F.3d 865 (2d Cir. 1994)..................................................................................... 17

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)............................................................................... 13, 21

*In re Express Scripts Holding Co. Sec. Litig.*,
  No. 16 CIV. 3338 (ER), 2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017) ................................... 4

*Garber v. Legg Mason, Inc.*,
  347 F. App'x 665 (2d Cir. 2009) ............................................................................... 4

*Gillis v. QRX Pharma Ltd.*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016).......................................................................... 22

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Great Am., E & S Ins. Co. v. Hartford Fire Ins. Co.*,
No. 09 Civ. 10010 (PAC) (GWG), 2012 WL 3186086 (S.D.N.Y. Aug. 3,
2012) ...................................................................................................................... 17

*Janbay v. Canadian Solar, Inc.*,
No. 10 CIV. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ............................ 24

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) ........................................................................................ 22

*In re Keyspan Corp. Sec. Litig.*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) ........................................................................... 18

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) .......................................................................................... 4

*Kramer v. Time Warner, Inc.*,
No. 89 CIV. 8234 (LBS), 1990 WL 166665 (S.D.N.Y. Oct. 24, 1990) ..................... 18, 20

*In re Lihua Int'l, Inc. Sec. Litig.*,
No. 14-CV-5037 (RA), 2016 WL 1312104 (S.D.N.Y. Mar. 31, 2016) ................................ 25

*Monroe Country Emps.' Ret. Sys. v. YPF Sociedad Anonima*,
15 F. Supp. 3d 336 (S.D.N.Y. 2014) ............................................................................. 20

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
135 S. Ct. 1318 (2014) ................................................................................... 19, 20, 21

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010) ......................................................................................... 24

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
Commerce*,
694 F. Supp. 2d 287 (S.D.N.Y. 2010) ........................................................................... 22

*In re PXRE Grp., Ltd., Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009) ...................................................................... 13, 21

*Portannese v. Donna Karan Int'l, Inc.*,
No. 97-CV-2011 CBA, 1998 WL 637547 (E.D.N.Y. Aug. 14, 1998) ................................. 19

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996) ........................................................................................... 14

*In re ShengdaTech, Inc. Sec. Litig.*,
No. 11 Civ.1918 (LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ............................ 25

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ................................................................. 21

*Silsby v. Icahn*,
    17 F. Supp. 3d 348 (S.D.N.Y. 2014) ..................................................... 18

*In re Rockwell Med., Inc. Sec. Litig.*,
    No. 16 Civ. 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ........................ passim

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008) ................................................................. 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...................................................................... 21, 23

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016) ................................................................. 24

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1194 (11th Cir. 2001) ............................................................. 23

## STATUTES

15 U.S.C. § 78u-4(b)(2) ........................................................................ 13

## RULES

Fed. R. Civ. P. 44.1 ........................................................................... 16

Fed. R. Civ. P. 8(a) ........................................................................... 13

Fed. R. Civ. P. 9(b) ....................................................................... 13, 19

## PRELIMINARY STATEMENT[1]

The premise of the Complaint is that Xunlei committed securities fraud by failing to characterize the customer digital rewards program it launched in October 2017 as "illegal" and "banned," even though the Chinese government had not—and still has not, ten months later— alleged any illegality or imposed any ban.  The Complaint's premise fails at its core, because the program is not illegal.  But the Complaint more fundamentally fails to state a claim because a company has no obligation under the securities laws to disparage its own program as "illegal," especially where, as here, all material aspects of the program are fully disclosed.  Nor can there be the required "strong inference" that company officers were aware of any alleged illegality in the circumstances presented here:  a company employing a new technology in an emerging area of law, and regularly making publicly-announced adjustments to avoid the program's exploitation by unauthorized users trying to distort its intended function.

Xunlei announced in early October 2017 its OneThing Cloud Rewards Program, comprised of two main features.  *First*, customers can buy Xunlei's OneThing Cloud hardware device, a blockchain-based technology that allows Xunlei customers to create a private cloud to store and exchange their own files, and obtain high-speed downloading, data synchronization, file management, and remote operation on mobile applications.  *Second*, OneThing Cloud purchasers can participate if they wish in a rewards program whereby they can earn digital

---

[1]    This brief refers to Xunlei Limited as "Xunlei" or the "Company"; Plaintiffs' Amended Class Action Complaint as "Complaint" or "FAC" (cited as "FAC ¶ _"); the Private Securities Litigation Reform Act, codified at 15 U.S.C. § 78u-4, as the "PSLRA"; the OneThing Cloud Rewards Program as "the Rewards Program"; the National Internet Finance Association of China as "NIFA"; Initial Coin Offerings as "ICO"; Initial Miner Offering as "IMO"; and the September 4, 2017 "Public Notice on Preventing Risks of Fundraising through Coin Offering" as "the Notice."  All references to exhibits are to those attached to the accompanying August 3, 2018 Declaration of William K. Pao, Esq.  Unless otherwise specified, all quotations and citations are omitted and all emphasis is added.

"OneCoin" rewards—redeemable for various OneCoin-specific products and services—if they choose to use the device to share with Xunlei their idle computing resources.

One month before Xunlei launched the Rewards Program, various Chinese government entities issued a joint public notice on "Preventing Risks of Fundraising through Coin Offering." In that Notice, the government, among other things, banned "fundraising through coin offerings," which it described as frequently involving "criminal activities such as illegal selling of tokens, illegal issuance of securities, illegal fundraising, financial fraud and pyramid schemes," and restricted the activities of trading platforms in "virtual currencies."  Plaintiffs' thesis is that the Rewards Program falls within the Notice's ban, and that Xunlei committed securities fraud whenever it publicly discussed the Rewards Program without simultaneously characterizing it as "illegal" and "banned."  The Complaint fails to state a securities fraud claim.

*First*, the Complaint fails to plead falsity or a material omission for two reasons:

- **The OneThing Cloud Rewards Program is not an illegal ICO and has never been "banned."**  The key factors that distinguish the Rewards Program from an illegal ICO are that (i) purchasers of the OneThing Cloud obtain a valuable device for a market (albeit discounted) price; (ii) the Rewards Program into which those purchasers can voluntarily enroll raises no funds for Xunlei and requires no money from users, and participants obtain no rights as stock or bond holders; and (iii) the Company has never provided a OneCoin trading platform, and has repeatedly taken steps to deter trading of OneCoin on various black-market trading platforms.  As reported in a December 2017 article that the Complaint incorporates by reference (FAC ¶¶ 32, 33):  "State-backed financial experts interviewed by the [news] program dismissed the idea that OneCoin is an ICO, noting Xunlei didn't raise a penny through the project."

- **The Complaint fails to plead material *facts* regarding the Rewards Program—as opposed to legal conclusions or Plaintiffs' characterizations—that Xunlei did not disclose.**  Xunlei disclosed every feature regarding the Rewards Program on which Plaintiffs rely in alleging that the Program is illegal.  In fact, the two third-party pronouncements that Plaintiffs allege revealed "the Truth" are simply negative characterizations, relying on the very facts that Xunlei had publicly disclosed from the outset.  The securities laws imposed no obligation on Xunlei to disparage its Rewards Program as illegal.

2

*Second*, the Complaint fails to plead facts giving rise to the required strong inference of scienter.  Plaintiffs do not even attempt to plead facts showing that any Xunlei officer had a motive and opportunity to commit fraud.  Thus, Plaintiffs must plead scienter through particularized allegations showing conscious misbehavior or recklessness.  Far from any such allegations, however, the record on this motion provides a far more compelling opposing inference of innocent intent, given:

- the contemporaneous views publicly expressed by various experts that the Chinese government's ban on ICOs should not apply to legitimate programs, like the Rewards Program, that do not raise funds for the issuing company;

- Defendants' disclosure of detailed information about the Rewards Program;

- the Company's admonitions shortly after launching the Rewards Program that "[t]here is no official trading platform" for OneCoins, that "we *do not encourage users*" to participate in third-party platforms, that users may be defrauded on such platforms, and that the Company may pursue legal action to stop illegal trading; and

- the Company's adjustments to deter unauthorized trading.

*Third*, the Complaint fails to plead loss causation.  It fails to identify a corrective disclosure that reveals some then-undisclosed material fact regarding the statements at issue.  Rather, the alleged "corrective disclosures" on which Plaintiffs rely are simply negative characterizations by others—a disgruntled former employee and a self-regulatory organization— of publicly known facts.  They therefore are insufficient to plead loss causation.

The Court should dismiss the Complaint with prejudice.

BACKGROUND[2]

### A.      Xunlei: A Leading Chinese Internet Company

Xunlei was founded in 2003 and went public in 2014, and stands today as a leader in

China in cloud-based technology.  *See* FAC ¶¶ 2, 22–24; Ex. A (4/25/18 Form 20-F) at 48–51.  It

operates an internet platform, and provides content delivery network services, download

acceleration, video and gaming acceleration, and distributed cloud storage.  *See id.*  Xunlei has

no significant debt and more than $372 million in cash, cash equivalents, and short-term

investments.  *See* Ex. A at 101.  As of December 31, 2017, Xunlei had approximately 4.3 million

subscribers, $200 million in annual gross revenue, and $82 million in gross profit.  *See id.* at 4,

6–7, 79, 113.  The Chinese government has designated the Company a national high-tech

enterprise,[3] and a Top 100 internet company for six consecutive years.[4]

### B.      Blockchain Technology, Initial Coin Offerings, and the Chinese Government's September 4, 2017 Pronouncement

Blockchain technology permits individuals to share information securely through a

decentralized digital database.  Shared information is securely transmitted through a public

---

[2]   This section is drawn from (i) the Complaint's allegations, which are accepted as true solely for purposes of this motion, (ii) documents incorporated by reference or integral to the Complaint, and (iii) publicly available materials, such as SEC filings and media reports.  *See, e.g.*, *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 208 (2d Cir. 2012) (holding that court may consider on motion to dismiss "documents incorporated by reference in the complaint, and public records"); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of SEC filings); *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (taking judicial notice of relevant newspaper articles on motion to dismiss); *In re Express Scripts Holding Co. Sec. Litig.*, No. 16 CIV. 3338 (ER), 2017 WL 3278930, at *1 n.1 (S.D.N.Y. Aug. 1, 2017) (courts may judicially notice publicly-available information, such as earnings-call transcripts).

[3]   *See* Ex. F (Dec. 22, 2017 Xunlei Press Release).

[4]   *See* Ex. G (July 30, 2018 Xunlei Press Release).

network as a "block," and recorded to a digital ledger (thus creating a "chain").  Blockchain has evolved as the go-to technology for start-ups, and is now embraced as a secure solution for a range of business, medical, education, real estate, supply chain, and IP needs.[5]

The use of blockchain to support new cryptocurrency and token issuances has led to a surge in ICOs that permit internet companies to "crowdfund" the resources needed to create or support particular products or services without relying on venture capital or stock sales.[6]  As blockchain has become more prevalent, there has been an increased need to validate or "mine" transactions.  An IMO involves selling mining hardware to process and validate blockchain transactions for a particular currency or token.

Although many ICOs have been legitimate, leading to a burst of new technologies, some have been a target for scammers, *see* FAC ¶ 27.[7]  This caused the Chinese government to take action.  On September 4, 2017, seven Chinese government entities jointly issued a "Public Notice . . . on Preventing Risks of Fundraising through Coin Offering."  *See* Ex. I (Seven Ministries' Public Notice Re: ICOs) (cited at FAC ¶ 28).  The Complaint quotes (and highlights) only one sentence and two sentence fragments of an English translation of the Notice.  *See* FAC ¶ 28.  The Notice, however, has six numbered sections, preceded by an introductory paragraph.

The introductory paragraph focuses on "fundraising activities."  It notes how the "large number" of recent "fundraising activities through issuing tokens including Initial Coin Offering

---

[5]   *See* Ex. H (September 15, 2015 *Forbes* article).

[6]   *See* Ex. L (December 16, 2017 *Wired* article).

[7]   *See also* Ex. N (May 17, 2018 *Wall Street Journal* article) (identifying 271 out of 1,450 ICOs with "red flags," including plagiarized or fraudulent investor documents and promises of guaranteed returns).

(ICO) . . . giv[e] rise to speculation and invit[e] suspicion of illegal financial activities . . . [and] have disrupted the economic and financial order."  The Notice's six sections are as follows.

 **(I) "The Essential Attributes of Fundraising Through Coin Offering"**:  The "essential attributes" of ICO "fundraising" are "financing bodies raising virtual currencies such as Bitcoin or Ethereum from investors through illegal sales and circulation of crypto currency or tokens." Those offerings are akin to "unauthorized and illegal public fundraising," and "are suspected of involving criminal activities such as illegal selling of tokens, illegal issuance of securities, illegal fundraising, financial fraud and pyramid schemes."

 **(II) "No Organizations or Individuals Shall Engage in Illegal Fundraising through Coin Offering"**:  The "ban" on which the Complaint relies applies to "fundraising through coin offering."  The Notice decrees that "[a]ny individuals or organizations that have completed fundraising through coin offering shall make arrangements to return the funds raised, and to ensure that legitimate rights and interests of the investor are protected and the risks involved are properly managed."  It further calls on "[t]he government departments concerned" to "strictly investigate and address the coin offering activities that have continued despite the ban and the illegal activities in the projects that had completed fundraising."

 **(III) "Management of Related Platforms Shall be Strengthened"**:  This section prohibits any "platform that provides trading and exchange services for coin offering" from engaging in a number of activities, including (i) "exchange businesses between legal tender and token or 'virtual currency'"; (ii) "proprietary trading activities or trading as a central counterparty of tokens or 'virtual currencies'"; and (iii) providing "pricing services" or acting as an "information intermediary for tokens or 'virtual currencies.'"  The Complaint does not allege that Xunlei is a "platform that provides trading and exchange services for coin offerings."

**(IV) "Financial Institutions and Non-Bank Payment Institutions Shall Not Conduct Businesses Related to Coin Offering Fundraising and Trading"**:  This section prohibits financial institutions and "non-bank payment institutions" from providing opening-account, registration, clearing and other services related to virtual currencies.  Plaintiffs make passing reference to this section (*see* FAC ¶ 28, third bullet), but do not allege that Xunlei is a financial or non-bank payment institution, or that it provides those services.

**(V) "The Public Need to Stay Aware of the Risks of Coin Offering Fundraising and Trading"**:  This section calls on the investing public to be aware of "multiple risks in coin offering fundraising and trading, including risk of false asset, risk of operation failure, risk of speculation, and etc.," and to be "cautious of frauds and scams."

**(VI) "Self-regulatory Organizations Shall Exercise Industry Self-Regulation"**:  This section calls on self-regulatory organizations "to urge members to consciously resist illegal financial activities related to coin offering fundraising and trading or 'virtual currencies,' and to stay away from market irregularities and improve investor education."

Various commentators expressed uncertainty in late 2017 as to the scope of the "illegal fundraising through coin offerings" the government intended to ban in the Notice.  Professor David Yermack, for example, of the New York University Stern School of Business, observed: "I have concluded that there is no clarity about what is and is not permitted.  When the Chinese 'banned' initial coin offerings in September, they stated that 'illegal activities' would no longer be permitted, but did not spell out what those activities are."  *See* Ex. J (December 5, 2017 Reuters article).

### C.      Xunlei's Blockchain Innovations

In September 2017, Xunlei launched the OneThing Cloud, which is an upgraded version of the ZQB device the Company had launched earlier in 2017, the purpose of which is to

crowdsource "users' computing power for bandwidth and storage."  FAC ¶ 25.  The sales

initiative's two key aspects are (i) the device itself, and (ii) the rewards program using digital

coins.

**The device**.  The OneThing Cloud device is a hardware box that allows users to create a

private cloud to store and exchange their own files.  *See* FAC ¶ 25; Ex. A at 50, 53.  Users can

bundle their device with the OneThing Cloud App, and thereby take advantage of the OneThing

Cloud's built-in features, including high-speed downloading, data synchronization, file

management, and remote operation.  *See id.*  The OneThing Cloud also permits users to share

idle computing resources with Xunlei, which then repurposes the extra computing resources for

use by other business-end customers.  *See id.*  Xunlei sold the devices at a discount.  *See* FAC

¶ 32; Ex. D (Q3 2017 Earnings Call Transcript) ("OneThing Cloud as a product is priced . . .

slightly lower [than] . . . the competitive market for equivalent products").[8]

**The rewards program**.  The OneThing Cloud Rewards Program allows customers who

use the device to share with Xunlei the computing resources they are not using to earn OneCoin

tokens that can be redeemed for OneCoin-specific products and services offered by Xunlei and

its business partners.  *See* Ex. A at 7, 50, 53.  Like most loyalty or membership rewards

programs, participation in the Rewards Program is voluntary.  *See id.* at 53 ("[U]sers of

OneThing Cloud can voluntarily participate in OneThing Reward Program . . .").  OneThing

Cloud owners can fully utilize the device's features and capabilities regardless of whether they

participate in the Rewards Program.  *See* Ex. B (OneThing Cloud website) (cited at FAC ¶ 5)

---

[8]   The OneThing Cloud device was recognized at the 2018 Consumer Electronics Show by
GeekPark as the "CES Most Popular Product," and by TMTPost.com as a "Global
Blockchain Innovation Product."  *See* Ex. M (January 13, 2018 article).

("Whether or not to join OneThing Rewards Program does not affect users' normal use of the equipment.").

**D.     Factors That Distinguish the OneThing Cloud Rewards Program from Banned "fundraising through coin offerings" Under the Notice**

Three key factors set apart Xunlei's innovative use of blockchain in the Rewards Program from the types of ICOs and token fundraisings addressed in the Notice.

*First*, the OneThing Cloud is not a sham device designed to disguise a coin offering.  To the contrary, it is a legitimate, functioning device that provides valuable acceleration and storage benefits to users, who can get their money's worth without ever enrolling in the voluntary rewards program and sharing their idle computing resources with Xunlei.

*Second*, unlike ICOs, which seek to raise funds to build a start-up or support a company's development, the Rewards Program does not raise money for Xunlei.  Rather, Xunlei customers can only obtain OneCoins by contributing their idle computing resources; they cannot purchase OneCoins from Xunlei with legal or virtual tender.  *See, e.g.*, Ex. A at 7, 94.  According to a December 2017 article incorporated by reference in the Complaint, "State-backed financial experts" deemed this factor dispositive.  They "dismissed the idea that OneCoin is an ICO, noting Xunlei didn't raise a penny through the project."  *See* Ex. K (December 11, 2017 article), cited in FAC ¶¶ 32, 33.  Nor do Rewards Program participants obtain any rights as stock or bond holders, as would be the case in a securities offering; they can only use the coins to exchange for OneCoin-specific products or services.  *See* Ex. A at 7, 50, 53.

*Third*, Plaintiffs do not allege that Xunlei has ever provided a OneCoin sales or trading platform.  They allege only that "*speculators* have created markets for trading OneCoin/LinkToken, exchanging it for hard currency like yuan, or other cryptocurrencies like Bitcoin or Ethereum."  *See* FAC ¶ 33.  And documents the Complaint incorporates by reference

show that Xunlei took steps to crack down on those speculators and their third-party OneCoin

trading platforms.  For example, Xunlei:

- Announced on October 19, 2017 (less than two weeks after launching the Rewards Program) that "[t]here is no official trading platform" for OneCoins, that "we *do not encourage users*" to participate in third-party platforms, that users may be defrauded on such platforms, and that the Company may pursue legal action to stop unauthorized trading.  *See* Ex. C (October 19, 2017 Xunlei Press Release) (translated) (cited at FAC ¶ 46).

- Disclosed on December 9, 2017 changes in the Rewards Program designed to, among other things, "effectively crack down on all kinds of possible speculative behaviors," including (i) launching a "real-name certification function" for "LinkToken Pocket" (formerly "Wankebi Wallet"), (ii) cooperating with law enforcement authorities to "crack down on illegal trading platforms," and (iii) advising users to "transfer the link tokens kept by illegal trading platforms to their LinkToken Pocket before December 16 to avoid any unnecessary loss of asset."  *See* Ex. E (December 9, 2017 Xunlei Press Release) (cited at FAC ¶ 60).

- Added transfer restrictions to LinkToken Pocket in late January 2018.  *See* FAC ¶ 41.

As summed up in a December 2017 article, "OneCoin seems to on path to having a legal status

similar to that of Bitcoin in China.  Bitcoin itself is legal in the country, but trading it is largely

restricted."  *See* Ex. K, cited in FAC ¶¶ 32, 33.

### E.    The Allegedly False and Misleading Statements

The Complaint alleges that the following statements were false or misleading:

- Xunlei's October 10, 2017 announcement that it was launching The OneThing Cloud Rewards Program and OneCoin.

  - allegedly misleading because the Company did not characterize the Rewards Program as illegal and "banned," and a "disguised" ICO, and unauthorized IMO.  *See* FAC ¶¶ 4, 42, 43.

- An October 16, 2017 article stating that an unidentified Xunlei person refutes that the Rewards Program is a disguised ICO, and quoting that person as saying that "OneCoin can only be used for the exchange of Xunlei products."

  - allegedly misleading for the same reason, and because OneCoin could be traded "for other cryptocurrencies and cash" (through the trading platforms identified in FAC ¶¶ 34–40).  *See id.* ¶¶ 44, 45.

- Xunlei's November 16, 2017 third-quarter earnings release that announced the successful launch of The OneThing Cloud, and in which Defendant Chen described Xunlei as "transforming . . . to a growth-oriented company developing innovative cloud computing products and exploring emerging blockchain technology," and noted that the Company's "cloud-sourced computing technology utilizes idle computing power including bandwidth, storage and CPU from individual bandwidth contributors to make internet more affordable to everyone."

  o allegedly misleading for the same reason. *See id*. ¶¶ 47, 48.

- Chen's statements during Xunlei's November 16, 2017 third-quarter earnings call that the Company "has no plans to monetize" the OneCoin tokens, and that Xunlei "as a private company" is "not in the position to comment [on] what is the very definition of ICO," but that the Company "works closely with the regulatory authorities in China and we follow all the local regulations and laws," and "conducts business in a manner that is honest and responsible, and meet all the regulations as law requirements."

  o allegedly misleading for the same reason, and because the Company uses the contributed computing resources to make money, i.e., "monetize." *Id*. ¶¶ 49–54.

### F.   The Alleged Disclosure of "the Truth"

The Complaint alleges that the market learned "the truth" about the Rewards Program's alleged illegal nature through announcements on November 28, 2017, and January 12, 2018. *See* FAC ¶¶ 55–63.  Neither announcement, however, disclosed any new facts.

**The November 28, 2017 statement of Yu Fei and Xunlei Big Data Information Service Co. Ltd. ("SXBD")**.  As of November 2017, Xunlei held a 28.77% equity interest in SXBD, a company chaired by then Xunlei Senior Vice President Yu Fei.  *See* FAC ¶¶ 7, 58.  On November 28, Fei addressed "rumors" that SXBD's business relationship with Xunlei was ending by making a preemptive strike.  Fei (i) attributed those rumors to Chen; (ii) accused Chen of disseminating those rumors "in retaliation for [SXBD]'s unwillingness, within the context of Chen Lei developing OneCoin's illegal activities, to associate with criminals' unilateral behavior"; (iii) stated that OneCoin "does not use any blockchain technology, . . . takes advantage of illegal exchanges and illegal group pyramid schemes, is a disguised ICO, and is an

illegal fund-raising scam"; and (iv) disclosed that Fei has "been questioned by the regulatory authorities because of OneCoin's illegal operating behavior." *Id*. ¶ 56.  Fei was a "disenchanted" Xunlei business partner, who made this accusation in "retaliation" for Xunlei retracting SXBD's authority to use Xunlei branding.  *See* Ex. K.

Xunlei responded on November 29 by, among other things, confirming that Xunlei had revoked SXBD's right to use the Xunlei brand name, and (i) noting Xunlei's "policy to abide by applicable laws and government regulations," (ii) noting that Xunlei will engage in proactive communications with authorities and implement an ID registration system in mid-December, and (iii) describing OneCoin as "a kind of digital asset" that "can be used on the Company's internet properties and should not be traded on other transaction platforms."  FAC ¶ 58.  Tellingly, the Complaint does not allege that anything in this statement was false or misleading.

**The January 12, 2018 National Internet Finance Association of China statement**.  On January 12, NIFA, a self-regulatory organization, issued a "Risk Alert" regarding ICOs, and identified OneCoin as a "potentially risky model that warrants vigilance."  FAC ¶ 61.  It stated that Xunlei "in effect substitutes LinkToken for the duty to pay back project contributors with legal tender, making it essentially a financing activity and form of disguised ICO," and that Xunlei has "lured many citizens" with "frequent promotional activities and publishing of trading tutorials."  The Risk Alert does not explain or provide any examples of Xunlei's "promotional activities" and "trading tutorials."

12

**ARGUMENT**

## I.   THE COMPLAINT FAILS TO STATE A SECTION 10(b) CLAIM

The Court is very familiar with the pleading standards for Section 10(b) claims.[9] Plaintiffs must plead facts showing that Defendants "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007). Under Rule 9(b) and the PSLRA, Plaintiffs must (i) specify the allegedly fraudulent statements, (ii) identify the speaker, (iii) state where and when the statements were made, and (iv) explain why the statements were fraudulent. *See id.* at 99; *see also ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Plaintiffs must also "state with particularity facts giving rise to a strong inference" that Defendants intended to deceive, manipulate, or defraud. *See* 15 U.S.C. § 78u-4(b)(2).

Apart from the PSLRA's and Rule 9(b)'s stringent pleading requirements, Rule 8(a) requires that a complaint plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a plausible claim, a plaintiff may not rely on conclusory allegations or facts contradicted by allegations in the complaint or documents incorporated by reference. *See ATSI Commc'ns*, 493 F.3d at 99 ("[a]llegations that are conclusory or unsupported by factual assertions are insufficient" to state a claim); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001)

---

[9]   *See, e.g.*, *In re Rockwell Med., Inc. Sec. Litig.*, No. 16 Civ. 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) (Sullivan, J.); *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009) (Sullivan, J.).

(allegations "contradicted either by statements in the complaint itself or by documents upon which its pleadings rely" may be disregarded on a motion to dismiss).

The Complaint essentially boils down to a single allegation of securities fraud:  that Xunlei failed to disclose that the Rewards Program is an illegal and banned "disguised ICO." That allegation fails the above pleading requirements in three ways.

*First*, the Complaint does not plead a material false statement or omission, because (i) it fails to plead plausible facts showing that the Rewards Program is illegal; and (ii) all the facts on which the Complaint's illegality conclusion is based were publicly disclosed, and the Complaint fails to identify any otherwise false or misleading statement.

*Second*, the Complaint fails to plead facts giving rise to a strong inference that Defendants believed the Rewards Program was illegal or a disguised ICO.  The opposite inference is far more compelling, given (i) that "State-backed financial experts" opined at the time that the Chinese government's ban on ICOs did not apply to programs like OneCoin that did not raise money; (ii) Defendants' robust disclosures about the Rewards Program, including prompt disclosures about unauthorized trading of OneCoin on third-party platforms; and (iii) Defendants' prompt steps to deter such trading.

*Third*, the Complaint fails to plead loss causation, because it does not identify any "corrective disclosure" that revealed some then-undisclosed fact regarding the Rewards Program.

### A.    Plaintiffs Fail to Plead a Material Misstatement or Omission

To plead an actionable misleading statement, Plaintiffs must allege particularized facts showing that Defendants (i) made a material misrepresentation that was false when made or (ii) omitted material information they had a duty to disclose.  *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812–13 (2d Cir. 1996).

14

### 1.    *The Rewards Program Is Not Illegal Under Chinese Law*

The only plausible reading of the Notice is that it does not render illegal all forms of digital rewards programs.  Its express purpose is to address "illegal public fundraising" that implicates "criminal activities."  The Rewards Program does not have any of those "essential attributes," and thus is not what was contemplated under the ban.

*First*, participants in the Rewards Program must first purchase the OneThing Cloud, which the Complaint does not allege to be a sham product or front for the illegal distribution of cryptocurrency.  To the contrary, it provides valuable acceleration and storage benefits to users, which can be enjoyed regardless of whether purchasers of the device voluntarily choose to enroll in the Rewards Program or share their idle computing resources with Xunlei.  Moreover, the Complaint does not allege that the price at which Xunlei sells the device suggests its use as a fundraising vehicle (such as by charging far more than its value).  It alleges only that Xunlei sells the device at a discount, *see* FAC ¶ 32, not that the discount was commercially unreasonable.

*Second*, the Rewards Program does not raise money for Xunlei, further distancing it from the Notice's objective to eliminate illegal "fundraising."  Customers cannot buy OneCoins from Xunlei; they can only obtain them by first purchasing a OneThing Cloud device, and then using that device to contribute their idle computing resources.  That is why "State-backed financial experts dismissed the idea that OneCoin is an ICO."  *See* Ex. K.  It is irrelevant that the contributed idle computing resources benefited Xunlei by helping to grow the business.  *See* FAC ¶ 25.  Companies obviously would not offer rewards if such programs did not benefit the company in some way.  Moreover, the dangers of frauds and scams are mitigated, if not completely absent, where, as here, (i) the digital coins are exchanged, not for money, but for *idle* computing resources that the customer would not otherwise use; and (ii) OneCoin recipients obtain no rights as equity or bond holders.  *See* Ex. A at 7, 50, 53.

*Third*, Xunlei did not provide a trading platform for these digital assets, thereby eliminating one of the main concerns that the Notice addressed.  Plaintiffs do not allege that Xunlei sponsored or approved of any of the chat rooms and trading platforms they list in the Complaint, *see* FAC ¶¶ 34–40.  And their own Complaint reflects the numerous steps Xunlei promptly took to curtail third-party trading in OneCoins.  *See supra* at 9–10.

Based on these public record facts, the Rewards Program does not fall within the Notice's ICO ban.  But to eliminate any potential doubt, Defendants are submitting the declaration of Professor Robin Huang, an expert in Chinese law, in which he opines that the Rewards Program is not an ICO and does not violate Chinese law.[10]  The Court may consider that opinion on this motion.  *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."); *see, e.g.*, *de Fontbrune v. Wofsy*, 838 F.3d 992, 994–95 (9th Cir. 2016) ("[U]nder Rule 44.1's broad mandate, foreign legal materials—including expert declarations on foreign law—can be considered in ruling on a motion to dismiss where foreign law provides the basis for the claim."); *CIH Int'l Holdings, LLC v. BT United States, LLC*, 821 F. Supp. 2d 604, 608 n.1 (S.D.N.Y. 2011) (considering expert declaration on foreign law in ruling on motion to dismiss).  Professor Huang's opinion is consistent with (i) the chorus of "State-backed financial experts" who "dismissed the idea that OneCoin is an ICO," Ex. K; and (ii) the absence of any Chinese government action against Xunlei in the ten months since the Rewards Program's introduction, even though the Notice called on "government departments" to "strictly investigate and address" coin offering activities that violate the ban. *See supra* at 6.

---

[10]   Defendants have filed a Rule 44.1 notice of intent to rely on foreign law.

Against this strong record, the Complaint offers legal conclusions that must be disregarded, *see Rockwell Med.*, 2018 WL 1725553, at *4, and two public statements that do not provide a plausible basis even for pleading (let alone *proving*) illegality.

*First*, the November 28, 2017 SXBD press release is unavailing for three reasons:

- it provides no support for its legal conclusions;

- it cannot be deemed an "admission," FAC ¶¶ 8, 56, because it is a legal conclusion, *cf. Eagleston v. Guido*, 41 F.3d 865, 873–74 (2d Cir. 1994) (fact witness's testimony that conduct violated equal protection rights "do[es]not amount to a party admission" under Federal Rules of Evidence); *Great Am., E & S Ins. Co. v. Hartford Fire Ins. Co.*, No. 09 Civ. 10010 (PAC) (GWG), 2012 WL 3186086, at *9 (S.D.N.Y. Aug. 3, 2012) ("Plaintiffs give no reason as to why a purported admission on a legal issue could [ ] be binding as an 'admission.'"); and

- it is obviously face-saving and retaliatory, as is apparent from the statement's content and was publicly reported, *see* Ex. K.

*Second*, the January 12, 2018 NIFA Risk Alert does not even accuse the Rewards Program of illegality.  Rather, it describes the Rewards Program as a "potentially risky model that warrants vigilance."  The record shows, of course, that Xunlei has indeed been quite "vigilant" from the outset.  *See supra* at 9–10.  Moreover, NIFA is an industry self-regulatory organization—not a government entity—the statements of which do not have the force of law.

### 2.    *The Complaint Fails to Identify Any Material Facts—as Opposed to Legal Conclusions—That Defendants Did Not Disclose or Misstated*

The Complaint should be dismissed for the additional reason that it fails to state a claim with respect to its two categories of allegations:  that Defendants (a) failed to disclose that the Rewards Program is illegal (even assuming it were ultimately determined to be illegal), and (b) falsely stated that Xunlei does not "monetize" OneCoin.

17

### a.   The Complaint Fails to Allege a Viable Omission Claim

Courts have repeatedly held that securities fraud plaintiffs cannot recover when the allegedly concealed information was publicly available.  *See, e.g.*, *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003) ("dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed").  As long as investors have all the material facts from which they can draw their own conclusion, the law requires nothing more.  *See Silsby v. Icahn*, 17 F. Supp. 3d 348, 362 (S.D.N.Y. 2014) ("The importance of disclosed facts, and any 'characterizations of or conclusions drawn from those facts[,] are matters that are left to the judgment of investors.'").  The securities laws do not require the issuer to disparage its own operations as illegal.  *See, e.g.*, *Kramer v. Time Warner, Inc.*, No. 89 CIV. 8234 (LBS), 1990 WL 166665, at *4 (S.D.N.Y. Oct. 24, 1990) ("[D]efendants were not required to characterize the alterations to the Equity Plan as being unauthorized.  The disclosure required by the Exchange Act is not 'a rite of confession.'"); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("[T]he federal securities laws do not require a company to accuse itself of wrongdoing."), *aff'd sub nom. Albert Fadem Tr. v. Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006).

Here, all material facts about the manner in which the Rewards Program works were either disclosed by Xunlei or publicly available.  Investors, therefore, had the ability to compare those facts against the legal principles laid out in the Notice.  Plaintiffs do not allege that Defendants had any unique knowledge that permitted them alone to judge the Rewards Program's legality.  Investors, therefore, could not have been defrauded.  *See, e.g.*, *Silsby*, 17 F. Supp. 3d at 362 ("Because Dynegy supplied investors with financial information from which investors could draw their own conclusions about whether Dynegy Holdings was solvent, the 10(b) Defendants had no duty to use the term 'insolvent' when describing the financial condition

18

of Dynegy Holdings."); *Portannese v. Donna Karan Int'l, Inc.*, No. 97-CV-2011 CBA, 1998 WL 637547, at *13 (E.D.N.Y. Aug. 14, 1998) ("company has no duty to disparage its own competitive position in the market where it has provided accurate hard data from which analysts and investors can draw their own conclusions about the company's condition and the value of its stock").

> **b.** **_The Complaint Fails to Allege Any Other False or Misleading Statement_**

Plaintiffs likewise have not identified anything false or misleading in the three categories of statements on which they rely:  (i) the October 16, 2017 Yicai Global article, *see* FAC ¶ 44; (ii) Chen's November 16, 2017 statement that Xunlei does not "monetize" OneCoin, *see id.* ¶ 51; and (iii) Chen's November 16, 2017 statement that Xunlei complies with all laws, *see id.* ¶ 53.

**Yicai Global article**.  The Yicai Global article cites another Chinese news outlet, The Paper, that quotes an unidentified Xunlei employee as disputing that OneCoin constitutes "a new version of banned initial coin offering," and explaining that "OneCoins can only be used for the exchange of Xunlei products" and cannot be purchased or traded in cash.  *See* FAC ¶ 44.  This allegation is not well-pleaded for the following reasons:

- it fails Rule 9(b) and the PSLRA's pleading requirements of identifying the speaker, and the "when" and "where" of the alleged statements.

- the statement that OneCoin is not "a new version of the banned initial coin offering" is both true, *see supra* at 9–10, and an inactionable opinion statement, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1325–26 (2014) (rejecting contention that statement of belief regarding compliance means that defendants "in fact are following the law," noting that the "argument wrongly conflates facts and opinions" and finding that defendants' opinions about legal compliance were not actionable misstatements).  The Complaint fails to plead (i) particularized facts showing that this opinion was not honestly held, *id*. at 1327, or (ii) "facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context," *id*. at 1332.

- the statement that "OneCoins can only be used for the exchange of Xunlei products" is accurate, *see supra* at 9–10, and is not rendered misleading merely because (as Xunlei early-on disclosed) others were misusing the digital coin in unauthorized third-party trading platforms, *see id*.

**Chen's "no plans to monetize" statement**.  Chen's November 16, 2017 statement that Xunlei had "no plan to monetize" OneCoin is true.  Read in context, Chen obviously meant that Xunlei does not sell OneCoins or exchange them for a user's cash, but only uses them to "encourage users to share idle bandwidth storage and [ ] CPU computing."  *See* Ex. D.

Plaintiffs' quarrel with this statement is simply an exercise in semantics.  They say that because Xunlei did not "have to spend hard currency" on the "computing resources" that participating users contributed, the Company was indirectly obtaining that "currency" from users, and thus "monetizing."  FAC ¶ 52.  But semantic differences when the facts are otherwise fully disclosed are not the fodder of a viable misrepresentation allegation.  *See, e.g.*, *Monroe Country Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 355–56 (S.D.N.Y. 2014) (defendants' failure to characterize facts as plaintiffs propose does not support actionable securities fraud claim); *Kramer*, 1990 WL 166665, at *4 (defendants not required to characterize Equity Plan alterations as "unauthorized").

**Chen's "we follow all local regulations and laws" statement**.  Chen's statement that Xunlei "work[s] closely with the regulatory authorities in China and we follow all the local regulations and laws," *see* FAC ¶ 53, is (i) inactionable puffery, *see City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (statements about compliance with legal requirements generally inactionable "puffery" if "too general to cause a reasonable investor to rely upon them"); and (ii) an inactionable opinion statement, *see Omnicare*, 135 S. Ct. at 1325–26.  When asked the difference between OneCoin and an ICO, Chen responded that he was not "in the position to comment what is the very definition of ICO,"

and then added: "what I can tell investors is that, we work closely with the regulatory authorities in China and we follow all the local regulations and laws."  *See* FAC ¶ 53.  An investor would have reasonably understood this statement to be Chen's opinion about Xunlei's compliance with his understanding of the laws.  *Cf. Omnicare*, 135 S. Ct. at 1329–30 (statements at issue must be viewed "in light of all [ ] surrounding text, including hedges [and] disclaimers").  Moreover, Plaintiffs fail to plead particularized facts showing that Chen did not honestly hold this belief, *id.* at 1327, or that he lacked a reasonable basis for that opinion, *id.* at 1332.

## II.   THE COMPLAINT FAILS TO PLEAD SCIENTER

A securities fraud claim "will survive [dismissal] only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  The required state of mind is an intent "to deceive, manipulate, or defraud."  *ECA & Local 134*, 553 F.3d at 193, 198.  Scienter can be established by alleging facts showing either (1) that Defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness.  *See id.*  While courts typically draw inferences in favor of plaintiffs, they must not do so for scienter allegations in a securities fraud case.  *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 194 (2d Cir. 2008) (dismissing Section 10(b) claim that failed to raise an inference of scienter "at least as compelling" as competing inference); *Rockwell Med.*, 2018 WL 1725553, at *16 (same); *PXRE Grp.*, 600 F. Supp. 2d at 548 (same).

### A.   The Complaint Alleges No Motive to Defraud

Plaintiffs allege no motive for Defendants' alleged misrepresentations, such as suspiciously timed or sized trades.  *See, e.g.*, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1131 (2d Cir. 1994) (absent insider trading allegations, "stock ownership does not provide

21

sufficient motive" to support allegation that defendants misrepresented company's financial condition to protect their positions and compensation); *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600–01 (S.D.N.Y. 2016) (same). Any attempt to plead scienter by relying on generalized motives to inflate Xunlei's ADS price and increase or maintain corporate profitability, *see* FAC ¶ 75 (Defendants' scheme was "intended to . . . artificially inflate and maintain the market price of Xunlei ADS securities . . . "), would fail, because "[m]otive[s] that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *accord Rockwell Med.*, 2018 WL 1725553, at *12.

### B.   The Complaint Does Not Adequately Plead Facts Showing "an Extreme Departure from the Standards of Ordinary Care"

Given their failure to plead motive and opportunity to defraud, Plaintiffs must rely on allegations of conscious misbehavior or recklessness, which imposes a "correspondingly greater" burden. *Kalnit*, 264 F.3d at 142. They must allege conduct that is "highly unreasonable and [that] represents an extreme departure from the standards of ordinary care." *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000). The requisite state of mind is one "*approximating actual intent and not merely a heightened form of negligence.*" *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 297 (S.D.N.Y. 2010) (emphasis in original). The Complaint does not come close to meeting this standard.

Defendants cannot be criticized—let alone charged with a state of mind *approximating actual intent to defraud*—for not considering the Rewards Program illegal. If "state-backed financial experts" did not at the time view OneCoin to be a banned or illegal ICO, how could the

similar view of Xunlei and its CEO have been fraudulent?  If NYU Professor Yermack publicly noted at the time that the Notice does not make clear what "illegal activities" involving ICO fundraisings were prohibited, how could Defendants be charged with knowing that Xunlei's blockchain rewards program was banned?  If Chinese-law expert Professor Huang has opined— based on his extensive experience with and knowledge of Chinese internet and financing law— that the Rewards Program is not an illegal ICO, how could it have been fraudulent for Defendants not to confess illegality?

Aside from the legal framework, other factors point to the absence of any bad intent. *First*, no facts about the Rewards Program are alleged to have been concealed.  The Company, in fact, immediately disclosed when it became "aware of illegal trading of OneCoin."  FAC ¶ 46. *Cf. Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1211 (11th Cir. 2001) (affirming dismissal of securities fraud claim, observing that "the disclosures actually made by [the defendant] significantly undermine any hint of fraud" and noting that defendants "did in fact disclose the substance of the alleged 'red flags'").  *Second*, Xunlei promptly and responsibly addressed unauthorized OneCoin trading on third-party platforms by (i) publicly denouncing such trading, (ii) warning users that they could be defrauded in those platforms, (iii) cooperating with the authorities against illegal traders, and (iv) making changes to the Rewards Program, including implementing a "real-name authentication function."  *See supra* at 9–10.

Under these circumstances, no reasonable person would deem the inference of scienter either "cogent" or "at least as compelling" as the opposing inference that Defendants believed their innovative blockchain rewards program to be legal, and were actively monitoring it to avoid the types of trading abuses the Chinese government had identified in the Notice.  *See Tellabs*, 551 U.S. at 324.  Plaintiffs therefore have failed to plead scienter.

### C.      The Complaint Fails to Plead Loss Causation

"Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 260 (2d Cir. 2016). The loss causation theory Plaintiffs attempt to plead here is that "the market reacted negatively to a 'corrective disclosure,' which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 677 (S.D.N.Y. 2007). A corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010).

Plaintiffs' corrective-disclosure theory fails because they do not point to any previously undisclosed fact that revealed the "truth" about the Rewards Program. They simply rely on the characterizations of illegality or potential illegality in the November 28, 2017 SXBD statement, FAC ¶ 56, and the January 12, 2018 NIFA Risk Alert, *id.* ¶ 61. Those statements do not reveal any *facts* not already known to the public and, thus, are not sufficient to plead loss causation. *See In re Omnicom*, 597 F.3d at 511–12 ("A negative [ ] characterization of previously disclosed facts does not constitute a corrective disclosure" sufficient to plead loss causation); *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 Civ. 975 (RPP), 2012 WL 1646888, at *31 (S.D.N.Y. May 10, 2012) ("negative characterizations of information that had already been disclosed by Defendants" were not corrective disclosures sufficient to plead loss causation); *see also Janbay v. Canadian Solar, Inc.*, No. 10 CIV. 4430 (RWS), 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012) (dismissing for failure to plead loss causation; "the raising of questions and speculation by analysts and commentators does not reveal any 'truth' about an alleged fraud"). On this basis as well, the Complaint fails to plead a Section 10(b) claim.

## III.     THE SECTION 20(a) CONTROL-PERSON CLAIM SHOULD BE DISMISSED

Because the Complaint fails to plead a primary violation, its control-person claim against

Chen, *see* FAC ¶¶ 83–87, should also be dismissed.  *See ATSI Commc'ns*, 493 F.3d at 108;

*Rockwell Med.*, 2018 WL 1725553, at *16.  The claim must also be dismissed because just as the

Complaint fails to plead scienter, it likewise fails to plead Chen's culpable participation, an

element of a Section 20(a) control-person claim.  *See, e.g.*, *In re Lihua Int'l, Inc. Sec. Litig.*, No.

14-CV-5037 (RA), 2016 WL 1312104, at *18 (S.D.N.Y. Mar. 31, 2016) (dismissing Section

20(a) claim; "Plaintiffs do not plead Huang's culpable participation for the same reason they do

not plead her scienter."); *In re ShengdaTech, Inc. Sec. Litig.*, No. 11 Civ.1918 (LGS), 2014 WL

3928606, at *11 (S.D.N.Y. Aug. 12, 2014) (same).

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.


Dated: August 3, 2018                              Respectfully submitted,
      New York, New York
                                            /s/ Jonathan Rosenberg
                                            Jonathan Rosenberg
                                            O'MELVENY & MYERS LLP
                                            7 Times Square
                                            New York, New York  10036
                                            Telephone:  (212) 326-2000
                                            Facsimile:  (212) 326-2061

                                            William K. Pao (*pro hac vice* pending)
                                            O'MELVENY & MYERS LLP
                                            400 South Hope Street
                                            Los Angeles, California  90071
                                            Telephone:  (213) 430-6000
                                            Facsimile:  (213) 430-6407

                                            *Attorneys for Defendants Xunlei Limited and*
                                            *Lei Chen*