UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE XUNLEI LIMITED SECURITIES LITIGATION | Civil Action No. 1:18-cv-00467-PAC |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Dated:  October 31, 2018

O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

400 South Hope Street
Los Angeles, California  90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407

*Attorneys for Defendants Xunlei Limited and Lei Chen*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    I.      PLAINTIFFS FAIL TO PLEAD A MATERIAL MISSTATEMENT. ................... 1

          A.    OneCoin and the Rewards Program do not violate Chinese ICO laws. ........................................................................................................ 1

                1.    *Professor Huang's unrebutted sworn expert opinion requires dismissal.* ....................................................................... 2

                2.    *The Rewards Program has no "essential attributes" of illegal fundraising.* ............................................................... 3

                3.    *The NIFA Risk Alert and the SXBD press release are insufficient to show or even plead illegality.* ................................ 3

          B.    Defendants disclosed all material facts relating to the Rewards Program. ...................................................................................................... 4

          C.    The Opposition's arguments about three specific statements are unavailing. ................................................................................................... 6

    II.     PLAINTIFFS FAIL TO PLEAD SCIENTER. ......................................................... 7

    III.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION. ....................................... 9

    IV.    PLAINTIFFS' SECTION 20(A) CLAIM FAILS AS A MATTER OF LAW. ............................................................................................................................. 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page

**CASES**

*In re AOL, Inc. Repurchase Offer Litig.*,
  2013 WL 6331802 (S.D.N.Y. Dec. 5, 2013) .................................................................... 1

*Axar Master Fund, Ltd. v. Bedford*,
  308 F. Supp. 3d 743 (S.D.N.Y. 2018) .............................................................................. 7

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2010 WL 6397500 (S.D. Fla. Aug. 18, 2010) .................................................................. 9

*In re BioScrip, Inc. Sec. Litig.*,
  95 F. Supp. 3d 711 (S.D.N.Y. 2015) ................................................................................ 5

*Frati v. Saltzstein*,
  2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011) .................................................................. 4

*Gabriel Capital, L.P. v. Natwest Finance, Inc.*,
  137 F. Supp. 2d 251 (S.D.N.Y. 2000) .............................................................................. 9

*Ganino v. Citizens Utilities Co.*,
  228 F.3d 154 (2d Cir. 2000) ............................................................................................. 5

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011) .............................................................................. 7

*Gregory v. ProNAi Therapeutics Inc.*,
  297 F. Supp. 3d 372 (S.D.N.Y. 2018) .............................................................................. 7

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
  251 F. Supp. 3d 596 (S.D.N.Y. 2017) .............................................................................. 5

*Jay Dees, Inc. v. Def. Tech. Sys., Inc.*,
  2012 WL 13059897 (S.D.N.Y. Feb. 29, 2012) ................................................................ 1

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005) ............................................................................................. 9

*In re Mylan N.V. Sec. Litig.*,
  2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) .................................................................. 5

*Pa. Pub. Sch. Employees' Ret. Sys. v. Bank. of Am. Corp.*,
  874 F. Supp. 2d 341 (S.D.N.Y. 2012) .............................................................................. 5

*Perez v. Higher One Holdings, Inc.*,
  2016 WL 6997160 (D. Conn. Sept. 13, 2016) ................................................................. 7

## TABLE OF AUTHORITIES

**Page**

*In re Pfizer, Inc. Sec. Litig.*,
   538 F. Supp. 2d 621 (S.D.N.Y. 2008) ............................................................................... 8

*In re PXRE Grp., Ltd., Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009) ............................................................................... 8

*In re Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir.), *cert. denied*, 534 U.S. 1071 (2001) ............................................. 8

*In re Security Capital Assurance, Ltd. Sec. Litig.*,
   729 F. Supp. 2d 569 (S.D.N.Y. 2010) ............................................................................... 8

*Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*,
   2014 WL 3900565 (S.D.N.Y. Aug. 8, 2014) ..................................................................... 5

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016) .............................................................................................. 9

*Youngers v. Virtus Inv. Partners Inc.*,
   195 F. Supp. 3d 499 (S.D.N.Y. 2016) ............................................................................... 8

**STATUTES**

15 U.S.C. § 77z-1(c)(1)-(2) ...................................................................................................... 1

15 U.S.C. § 78u-4(c)(1)-(2) ...................................................................................................... 1

**RULES**

Fed. R. Civ. P. 11 ..................................................................................................................... 1

## PRELIMINARY STATEMENT[1]

The Opposition confirms what the Motion showed: that there is no substance to the Complaint's allegations. The upshot of Plaintiffs' frivolous claims are:

- accusations that the Program, which has won numerous awards, violates Chinese law, where *unrebutted* foreign law expert testimony shows that it does not.

- allegations of material omissions, where Plaintiffs do not identify *a single fact*— as opposed to unwarranted legal characterizations—that was concealed.

- a charge of fraudulent intent based on Defendants not branding their own Program as illegal, even though the securities laws impose no such self-disparagement obligation, and no Chinese government agency or official has *ever* characterized the Program as a banned or an illegal ICO.

- loss-causation allegations, where the company's stock-price drop cannot be attributed to the public disclosure of *any* previously concealed fact.

This Court should swiftly dismiss the Complaint with prejudice, and consider imposing sanctions under the PSLRA, 15 U.S.C. §§ 77z-1(c)(1)-(2), 78u-4(c)(1)-(2), and Fed. R. Civ. P. 11. *See In re AOL, Inc. Repurchase Offer Litig.*, 2013 WL 6331802, at *5 (S.D.N.Y. Dec. 5, 2013) (imposing sanctions where allegations "utterly lacking in support"); *Jay Dees, Inc. v. Def. Tech. Sys., Inc.*, 2012 WL 13059897, at *6 (S.D.N.Y. Feb. 29, 2012) (same).

## ARGUMENT

I. **PLAINTIFFS FAIL TO PLEAD A MATERIAL MISSTATEMENT.**

   A. **OneCoin and the Rewards Program do not violate Chinese ICO laws.**

The premise of Plaintiffs' case is that Defendants failed to disclose that the Program constitutes "a disguised ICO" that was banned under the Notice. *See* FAC ¶ 76. That premise fails, requiring dismissal. *First*, Plaintiffs proffer no legal opinion to counter Professor Huang's

---

[1] This brief uses the same defined terms as those used in the Motion. Unless otherwise specified, all quotations and citations are omitted and all emphasis is added.

sworn opinion that the Rewards Program does not violate Chinese law. *Second*, Plaintiffs do not contest that the Program does not have any of the illegal fundraising "essential attributes" referenced in the Notice. *Third*, Plaintiffs have no answer to Defendants' showing that the two pronouncements on which the FAC relies—the NIFA Risk Alert and the SXBD press release—do not show illegality.

      1.  *Professor Huang's unrebutted sworn expert opinion requires dismissal.*

  Plaintiffs do not challenge the conclusion of Professor Hui Huang, an expert on Chinese internet and finance laws, that "the OneThing Cloud and the Rewards Program do not constitute an ICO and do not violate Chinese laws and regulations." *See* Huang Decl. ¶ 6. Their argument that an expert cannot testify on Defendants' state of mind or assert facts outside the pleadings, Opp. 17, misses the mark. Professor Huang offers no opinion regarding Defendants' state of mind. And Plaintiffs do not dispute that determining a foreign country's law is an issue of law, and courts routinely consider expert opinions on foreign-law issues at the pleadings stage. Mot. 16. Plaintiffs fail to cite a single decision in which a court refused to consider expert testimony on a motion to dismiss a complaint that pleads a foreign-law violation.

  Professor Huang did not concede, as Plaintiffs contend, a "legal uncertainty" regarding the Rewards Program. Opp. 19 n.2. His statement that "it is not fully clear what amounts to an ICO," means only that the Notice provides no bright-line test and, thus, that determining whether certain activities constitute an ICO requires a "case-by-case" analysis—hardly a controversial position. *See* Huang Decl. ¶ 14 ("Due to the lack of clarity over the definition of ICO, Notification No. 99 states that rectification will be carried out with respect to ICOs on a case-by-case basis."). After applying the applicable Chinese law to this specific case—and carefully taking into account all the attributes of OneThing Cloud and the Rewards Program—Professor Huang unequivocally concludes that OneThing Cloud and the Program do not violate Chinese

laws or regulations.  *See id*. ¶¶ 28–45.  And as Plaintiffs do not dispute, Chinese law experts quoted in articles the Complaint incorporates by reference likewise conclude that while aspects of the Notice are unclear, it was not meant to apply to initiatives like the Program that not raise money.  Mot. 9, 15.

        2.    *The Rewards Program has no "essential attributes" of illegal fundraising.*

Plaintiffs fail to dispute Defendants' showing, Mot. 15–16, that the Rewards Program has no "essential attribute" of the "illegal fundraising" that the Notice targets:

- customers exchange idle computing resources, not money, for OneCoin, and Xunlei does not receive any legal or virtual currency from users or others in exchange for OneCoin, Mot. 15, *see also* Huang Decl. ¶ 30;

- Xunlei does not sponsor or otherwise condone the trading of OneCoin, used in the Rewards Program, and when customers began trading illegally on their own, Xunlei promptly took steps to curtail that trading, Mot. 16, *see also* Huang Decl. ¶¶ 32–33; and

- The OneThing Cloud provides customers with valuable acceleration and storage benefits (regardless of whether they participate in the Program), and is not a sham device or disguised form of fundraising where the product is sold for much more than its market price, Mot. 15, *see also* Huang Decl. ¶ 31.

        3.    *The NIFA Risk Alert and the SXBD press release are insufficient to show or even plead illegality.*

The Opposition does not refute Defendants' showing that neither the NIFA Risk Alert nor the SXBD press release provides a basis for pleading that the Program is illegal.

Plaintiffs concede that the NIFA Risk Alert noted only that the Rewards Program was a "*potentially* risky model that warrants vigilance," Opp. 8, and that the Alert nowhere asserts that the Program is illegal, Mot. 17.  Moreover, while Plaintiffs equate NIFA to "Chinese authorities," Opp. 2–3, they do not contest that NIFA is an industry self-regulatory organization—not a government entity—the statements of which do not have the force of law.  *See* Mot. 17; Huang Decl. ¶¶ 41–42.

Plaintiffs also do not address the obvious deficiencies with their attempt to bind Defendants with the "admission" of former Xunlei employee Yu Fei in the SXBD press release that the Program is "unlawful" or "illegal." They do not dispute that (i) Fei provides no facts supporting her pronouncement; and (ii) legal conclusions cannot be deemed "admissions." Mot. 17. While the Opposition parrots the Complaint's assertion that Fei was fired in retaliation for her accusation, Opp. 7, it does not respond to Defendants' showing, Mot. 11–12, 17—based on documents the Complaint incorporates by reference—that Fei, SXBD's Chair and a large shareholder, made her accusations in response to Xunlei withdrawing SXBD's authority to use Xunlei's trademarks.

**B.  Defendants disclosed all material facts relating to the Rewards Program.**

The Opposition does not identify a single fact about the Rewards Program that was not publicly available. Instead, Plaintiffs simply reiterate the Complaint's charge that Xunlei did not self-characterize the Program as "illegal"—even though there has been no government finding of illegality. Opp. 13. But Plaintiffs have no answer to Defendants' showing that the securities laws impose no such obligation. *See* Mot. 18; *see also Frati v. Saltzstein*, 2011 WL 1002417, at *5 (S.D.N.Y. Mar. 14, 2011) (Crotty, J.) ("[T]he law does not impose a duty to disclose uncharged, unadjudicated wrongdoing or mismanagement.").

Plaintiffs argue that "once Defendants started touting the OneCoin cryptocurrency scheme to investors, they were obligated to disclose all material information necessary to avoid rendering their statements misleading." Opp. 12. But pejorative characterizations aside, Defendants did exactly that—they disclosed all material *facts* about the Rewards Program. In the end, Plaintiffs do not dispute that investors had all the necessary information to assess for themselves the Program's legality. Mot. 18–19; *see also Frati*, 2011 WL 1002417, at *5 ("[I]f

4

plaintiffs were concerned about the structure or legality of the Shelter or Truk Funds, they could have investigated prior to investing."). Moreover, the cases Plaintiffs cite confirm that the critical question is whether *facts*—not legal conclusions—were omitted. The court in *Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*, for example, denied a motion to dismiss not because the company needed to accuse itself of wrongdoing, but because it had misrepresented its business cost to prospective buyers. 2014 WL 3900565, at *12 (S.D.N.Y. Aug. 8, 2014). The other decisions Plaintiffs cite likewise turned on the defendants' failure to disclose *facts* about ongoing misconduct—price-fixing, *see In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *18 (S.D.N.Y. Mar. 28, 2018); lack of independence, *see In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 612 (S.D.N.Y. 2017); and ongoing breaches of mortgage representations, *see Pa. Pub. Sch. Employees Ret. Sys. v. Bank. of Am. Corp.*, 874 F. Supp. 2d 341, 352 (S.D.N.Y. 2012).

The decision in *In re BioScrip, Inc. Securities Litigation*, 95 F. Supp. 3d 711 (S.D.N.Y. 2015), similarly turned on nondisclosure, not legal characterizations. There, the defendants failed to disclose that the company had received a Department of Justice civil investigative demand ("CID") that provided specific information regarding the company's conduct under investigation. *Id.* at 729. That undisclosed CID "allow[ed] for the inference that [the company] could not have believed the veracity of its legal compliance statements." *Id.* Here, in contrast, Plaintiffs fail to identify any undisclosed facts allowing the inference that Defendants did not believe that the Rewards Program complied with Chinese law. *See infra* at 7–9.

Finally, Plaintiffs knock down a strawman in arguing that the "truth-on-the-market" defense does not apply. *See* Opp. 14–15, 21. Defendants have not argued that any factual misrepresentation is immaterial, because the market already knew the truth. *See Ganino v.*

5

*Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000).  Rather, Defendants have shown that they neither misrepresented nor omitted any material fact about the Program.

      **C.**      **The Opposition's arguments about three specific statements are unavailing.**

Plaintiffs fall short in trying to rehabilitate three alleged misstatements—(i) in the October 16, 2017 article citing an unidentified Xunlei person, (ii) by Chen on November 16, 2017, that Xunlei does not "monetize" OneCoin, and (iii) by Chen on November 20, 2017, that Xunlei "follow[s] all the local regulations and laws."  None of those statements moves the needle for Plaintiffs in pleading securities fraud.

*First*, Plaintiffs argue that it is enough that the Complaint identified the statement in the October 16, 2017 article as having been made by someone at Shenzhen Onething Technologies Co., Ltd., sometime in October 2017, somewhere in China.  But without knowing the specific speaker or even his or her position, it is impossible to discern the basis or context of the statements.  In any event, Plaintiffs have failed to rebut Defendants' showing that the statements, OneCoin is not "a new version of the banned initial coin offering" and "OneCoins can only be used for the exchange of Xunlei products," are true.  *See supra* at 2–4; *see also* Mot. 9–10.

*Second***,** in response to Defendants' showing that Plaintiffs have only a semantic quibble with Chen's November 16, 2017 statement that Xunlei "has no plans to monetize OneCoin," Plaintiffs argue that the statement was "semantically different from the truth," rather than "semantically true." Opp. 16.  Whatever that means, Plaintiffs cannot dispute (i) that investors had all material facts necessary to evaluate for themselves Chen's "no plans to monetize" assertion or (ii) the legal principle that Plaintiffs cannot state an actionable securities fraud claim by imposing their own characterizations of the legal ramifications of disclosed facts.  Mot. 20.

*Third*, Plaintiffs argue that Chen's November 20, 2017 statement that Xunlei "follow[s] all the local regulations and laws" is actionable because it did not disclose "material, known adverse information" and was not "casted [sic] as opinion." Opp. 16. The former point is wrong, as Defendants have shown. *See supra* at 4–6. This renders the latter point irrelevant. But it is also incorrect: opinion statements need not be "tempered in any way as expressions of belief." *Axar Master Fund, Ltd. v. Bedford*, 308 F. Supp. 3d 743, 755 (S.D.N.Y. 2018). Rather, "statements of opinion must be considered in the context in which they arise." *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 397 (S.D.N.Y. 2018). Here, Chen prefaced his "we follow all the local regulations and laws" assertion by making clear that he was not "in the position to comment what is the very definition of ICO." FAC ¶ 53. That qualification rendered Chen's legal-compliance statement aspirational, and therefore an opinion. *See Perez v. Higher One Holdings, Inc.*, 2016 WL 6997160, at *13 (D. Conn. Sept. 13, 2016) (compliance statements are inactionable "particularly [ ] where, as here, the statements are explicitly aspirational").

## II. PLAINTIFFS FAIL TO PLEAD SCIENTER.

Plaintiffs do not dispute in the Opposition—and, thus, concede—that Defendants had no motive and opportunity to commit fraud. Mot. 21–22. Instead, Plaintiffs argue that the Complaint pleads facts showing a strong inference of scienter because (i) the Notice "warned" Defendants that the Rewards Program is illegal; (ii) Yu Fei "directly told Xunlei and Chen that they were circulating a "disguised ICO"; and (iii) Chen knew that the Program violated Chinese law because he "was working closely with the applicable regulators." Opp. 18–19. These arguments wither in the face of the record on this motion.

*First*, the Notice—a public document—cannot give rise to scienter. *See, e.g., Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011) ("[P]laintiffs cannot rely on information

7

generally known or available to the public to support circumstantial scienter allegations."); *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 544 (S.D.N.Y. 2009) ("[T]he Court finds that these publicly available articles fail to support an inference of fraudulent intent."); *In re Pfizer, Inc. Sec. Litig.*, 538 F. Supp. 2d 621, 637 (S.D.N.Y. 2008) ("That the information was publicly available when the allegedly, misleading statements were made weakens any inference that defendants intended to defraud the market."). Plaintiffs have failed to do what is required to plead scienter: "allege[ ] that [D]efendants . . . had access to non-public information contradicting their public statements." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir.), *cert. denied*, 534 U.S. 1071 (2001); *see also Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 519 (S.D.N.Y. 2016) ("[T]he contradictory information must have been non-public in order to raise a strong inference of intent . . . .").

Plaintiffs make no sense in arguing that it was self-evident from the Notice that the Rewards Program is illegal. As discussed above, *see supra* at 2, 4–6, Plaintiffs do not dispute that Defendants fully disclosed how the Program operates. It is implausible that Defendants would publicly launch a program that anyone could see violated a government Notice issued one month earlier. The far more "cogent" and "compelling" inference is that Defendants did not believe that the Program was illegal under the Notice. *In re Security Capital Assurance, Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 595–96 (S.D.N.Y. 2010) (no scienter where "Plaintiffs were just as aware of the housing market crisis as they allege Defendants were, but they did not act on that information to sell their stock as the price declined.").

*Second*, Plaintiffs at best point to a difference of opinion in arguing that the Program's illegality was "conceded by Xunlei's whistleblower, Yu Fei." Opp. 18–19. Their contention that the Court can infer scienter from "Xunlei's decision to retaliate" against Fei, *id.* 19, is negated by

8

(i) Fei's failure to disclose any concealed fact suggesting illegality and (ii) the documents the Complaint incorporates showing that Fei was retaliating against Xunlei.  *See supra* at 4.

*Third*, Chen's statements that Xunlei was "work[ing] closely with the regulatory authorities in China" does nothing to "confirm his scienter."  Opp. 19.  Plaintiffs cannot manufacture a scienter allegation with speculation that the regulators must have informed Chen that the Rewards Program is illegal.  *See generally Gabriel Capital, L.P. v. Natwest Finance, Inc.*, 137 F. Supp. 2d 251, 261 (S.D.N.Y. 2000) ("It is well established that plaintiffs cannot plead scienter based on speculation and conclusory allegations.").  Again, the opposite inference is far more cogent and compelling, because the government has taken no action since the Program was introduced a year ago, even though the Notice called on "government departments" to "strictly investigate and address" coin offering activities that violate the ban.  Mot. 16.

### III.     PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION.

Plaintiffs contend for the first time in the Opposition that the SXBD press release and the Risk Alert establish loss causation under both the "corrective disclosure" and "materialization of the risk" theories, because those statements revealed that the Rewards Program is illegal.  Opp. 20–21.  But under either a "corrective disclosure" or "materialization of the risk" theory, Plaintiffs must plead facts showing that that the disclosure of information "concealed . . . from the market . . . negatively affected the value of the security."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005); *see also In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261–62 (2d Cir. 2016) (same).  And as Plaintiffs do not dispute, the disclosure must be of *facts*, not mere characterizations of disclosed facts.  Mot. 24; *see also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2010 WL 6397500, at *28 (S.D. Fla. Aug. 18, 2010) ("negative characterization of already public information . . . does not amount to either a corrective disclosure or the materialization of

a risk that was not previously disclosed, and it cannot support a finding of loss causation as a result"). Because Plaintiffs fail to identify any previously undisclosed *fact* revealed in the press release or Risk Alert, the FAC fails to plead loss causation. And the "truth on the market defense," Opp. 21, has nothing to do with Defendants' arguments. *See supra* at 5–6.

## IV.   PLAINTIFFS' SECTION 20(A) CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs concede that they must plead Chen's culpable participation to state a Section 20(a) claim, but argue that the Complaint does so by alleging that Chen (i) "dominated the Company's operation and management," (ii) "claimed to understand the legal restrictions on ICOs," (iii) "was aware of adverse non-public information about the OneCoin Program," and (iv) participated in the design and promotion of the Program. Opp. 21. Those allegations are insufficient.

Whether Chen "dominated" the Company would only go to the "control person" determination, not culpable participation. Moreover, Chen did not "claim[] to understand the legal restrictions on ICOs." To the contrary, he made clear that "we're not in the position to comment what is the very definition of ICO." FAC ¶ 53. And as discussed above, *see supra* at 4–6, Plaintiffs identify no material *facts* about the Rewards Program that were not publicly disclosed. Finally, that Chen "participated in the design and promotion of the OneCoin program" shows only participation—not *culpable* participation.

## CONCLUSION

For the foregoing reasons, and those in the Motion, Defendants respectfully request that the Court dismiss the FAC with prejudice, and consider imposing PSLRA and Rule 11 sanctions.

10

Dated: October 31, 2018
       New York, New York

Respectfully submitted,

/s/ Jonathan Rosenberg

Jonathan Rosenberg
O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

William K. Pao (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407

*Attorneys for Defendants Xunlei Limited and Lei Chen*